Filed 4/30/14  In re A.P. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.P. et al., Persons Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>T.P. et al.,<br><br>        Defendants and Appellants. | A139885<br><br>(Contra Costa County Super. Ct. Nos. J11-00931 & J11-00932) |

The two children of T.P. (Mother) and A.P. (Father) were detained by the Contra Costa County Children and Family Services Bureau (Agency) on allegations that Mother failed to protect the children from the effects of Father's domestic violence and substance abuse.  Two years later, the juvenile court terminated reunification services for the parents and scheduled a permanency planning hearing.  Five days before the permanency planning hearing, Mother filed a petition to modify the order terminating her reunification services under Welfare and Institutions Code[1] section 388.  The juvenile court summarily denied the section 388 petition solely on the grounds that it was untimely.  We reverse that denial and vacate the order terminating the parental rights of the parents.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

## BACKGROUND

The two children of Mother and Father, four-month-old A.P. and his two-year old-sister, Z.P. (the children), as well as their half brother D.G., were the subjects of dependency petitions under section 300, subdivisions (b) and (j), filed June 13, 2011.[2] The petitions alleged Father had a substance abuse problem and had engaged in domestic violence against Mother. He was also alleged to have threatened five-year-old D.G. with a gun. The children were detained and placed in foster care. In October 2011, Mother and Father stipulated to the allegations of an amended petition.

In November 2011, the juvenile court ordered reunification services for the parents and continued the children in foster care. In a report filed at the time, the Agency stated that Mother had joined a domestic violence support group and Father had entered a residential substance abuse treatment program. Since the children's detention, the parents had participated in weekly, one-hour supervised visits.

In April 2012, nearly a year after the children's detention, they were returned to Mother's custody. Although working two jobs, Mother had been trying "diligently," if not entirely successfully, to pursue reunification services. Since the November hearing, Father had maintained his sobriety, and he continued to participate in substance abuse programs. His weekly supervised visits with the children were reported to be "appropriate."

The Agency filed a supplemental petition in March 2013, seeking to have the children returned to foster care because Father had resumed his substance abuse in December 2012. Mother claimed ignorance of Father's conduct, although he had been permitted to stay overnight in her home three to four days per week since October. The juvenile court granted the requested relief.

In a dispositional report prepared in May 2013, the Agency stated that Mother's pride prevented her from providing information about other family members with whom

---

[2] The dependency proceedings with respect to D.G. are not a subject of this appeal.

2

the children might be placed; she was concerned her family would belittle her as a bad mother. Although she was attending therapy, the Agency was concerned she did "not understand the seriousness of the current family situation." It appeared that Father was continuing to abuse alcohol and marijuana. There was reason to believe Father's domestic violence had resumed during the time the children were living with Mother, and the Agency was concerned that Mother was reluctant to alienate Father because she lacked relationships with other adults. Given the parents' failure "to successfully address the issues which brought them in front of [the] Court initially," the Agency recommended termination of their reunification services. At the subsequent hearing, the juvenile court adopted the recommendation and scheduled a permanency planning hearing under section 366.26, telling the parents, "I'm surprised at both of you. I think you can do better, and you have got time to show the court that you can. [¶] You can file a 'change of circumstance'; I'll be looking for it."

In a report prepared for the permanency planning hearing, the Agency recommended termination of parental rights and a permanent plan of adoption. The Agency continued to be concerned that, although Mother loved the children, she was unwilling to acknowledge Father's domestic violence and substance abuse and did nothing to prevent them. As the Agency noted, she "does not put her children's well being a priority."

Five days before the scheduled hearing, Mother filed a petition for modification under section 388. The petition stated that in the three months since the dispositional hearing, Mother had organized a "support system" consisting of family members and friends from church and was "no longer in a relationship" with Father. Mother requested that visitation be expanded or the children returned to her care.

The juvenile court opened the permanency planning hearing by telling the parties, "I did not grant the 388 petition. It just came in to our court, actually, last night. It was filed on the 19th, but we—I did not get it until last night. And so since the hearing was today, I felt that was a little late. So I did not grant it." Counsel asked to address the denial, pointing out that the petition was timely filed and arguing, "If it did not get up to

3

the Court in time, I'm not sure why my client is being penalized for that." The court responded, "Let's see. You filed this on the 19th, it looks like. That's four days ago, four court days. This case is in its 27th month of services to mother. I find it not timely." The court also declined to consider a memorandum submitted by the Agency addressing the section 388 petition, since, as the court said, "I did not grant the 388 [petition because it was] untimely." After additional argument and testimony, the court terminated the parental rights of both parents and set adoption as the permanent plan.

Both parents have appealed the termination of their parental rights.

## DISCUSSION

Mother contends the juvenile court erred in summarily denying her section 388 petition as untimely. We agree.

Section 388 permits "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court" to petition "for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court" on grounds of "change of circumstance or new evidence." (§ 388, subd. (a)(1).) "The parent bears the burden of showing both a change of circumstance exists and that the proposed change is in the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) "In order to avoid summary denial, the petitioner must make a 'prima facie' showing of 'facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citations.] '[I]f the petition fails to state a change of circumstances or new evidence that might require a change of order, the court may deny the application ex parte. [Citation.]' [Citation.] On the other hand, 'if the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' [Citation.]" (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912, fn. omitted (*Lesly G.*).) "When a parent makes a prima facie showing of changed circumstances under section 388, he or she has a due process right to a full and fair hearing on the merits." (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1463.) We review the denial of a section 388 petition for abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

Because "[a]ny order made by the [juvenile] court . . . may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article" (§ 385), there is no time limit for filing a section 388 petition within an ongoing dependency case. A section 388 petition may be filed and heard at any time, up to and including the time of the section 366.26 hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*).) In *Marilyn H.*, the court addressed whether the juvenile court is required at a permanency planning hearing to consider returning the child to the parent. The Supreme Court held that while the dependency statutes do not authorize the court to consider reunification as an option at the permanency planning hearing, a parent may nonetheless raise the issue of reunification "by filing a petition pursuant to section 388 for modification or termination of jurisdiction based on changed circumstances." (*Id.* at p. 298.) The court concluded that the ability to petition for modification even as late as the permanency planning hearing is one of the "[s]ignificant safeguards" built into the dependency scheme. (*Id.* at p. 307.) Even after the focus has shifted away from reunification, "the scheme provides a means [through section 388] for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status." (*Id.* at p. 309.) Accordingly, the availability of section 388 relief at, in effect, the last minute is a critical part of the dependency process. (See, e.g., *Lesly G., supra,* 162 Cal.App.4th at pp. 909, 914–915 [reversing an order terminating parental rights for failure to hold a hearing on a section 388 petition filed on the date of the section 366.26 hearing].)

Mother's section 388 petition, filed five days before the scheduled permanency planning hearing and seeking to premise reunification on changed circumstances, was timely under *Marilyn H.* The juvenile court's denial of the petition on grounds of untimeliness was legally erroneous and, for that reason, an abuse of discretion.

Without using the term "harmless error," the Agency urges us to affirm the juvenile court's decision on the ground that Mother's section 388 petition was meritless. As noted above, the petition was required only to "make a 'prima facie' showing of 'facts which will sustain a favorable decision if the evidence submitted in support of the

5

allegations by the petitioner is credited.' " (*Lesly G., supra,* 162 Cal.App.4th at p. 912.) Even assuming the juvenile court's failure to address the merits of Mother's petition could be sustained on grounds of harmless error, we cannot say Mother's petition failed, as a matter of law, to make a prima facie case of changed circumstances in the children's best interests.[3] The Agency's recommendation for termination of parental rights was not based on any affirmatively neglectful conduct by Mother. Rather, the Agency was concerned that because Mother had no community of support and, in part for that reason, was unable or unwilling to sever her ties with Father, she could not protect the children from the threat presented by his violence and substance abuse. The petition states that Mother had taken steps to establish ties to adults other than Father and had terminated her relationship with him. Taken at face value, these are new developments suggesting Mother was finally working to correct the conditions that precluded reunification. Had it considered the petition on its merits, the juvenile court could have found a prima facie case for modification.

Father has also appealed, contending the juvenile court erred in terminating his parental rights because he had a "beneficial relationship" with the children under section 366.26, subdivision (c)(1)(B)(i). While we find that argument to border on frivolous, we nonetheless vacate the juvenile court's termination of Father's parental rights. The Rules of Court forbid, with limited exceptions, the termination of the rights of only one parent in a section 366.26 hearing. (Cal. Rules of Court, rule 5.725(a)(2).) Accordingly, it is generally held that when the section 366.26 termination of the parental rights of one parent is reversed, the termination of the rights of the other parent should be reversed as well. Once the parental rights of one parent are reinstated, "there is no legitimate purpose to be served by leaving the minors without a father and without whatever legal benefits may come to them from [the father] and from the paternal side of their biological family.

---

[3] The Agency's case is based in part on the allegations of a social worker in the memorandum submitted to the court, but Mother's petition must be evaluated on its face, assuming the facts it asserts to be true. (*Lesly G., supra,* 162 Cal.App.4th at p. 912.) The truth of those facts must be resolved by means of a hearing if a prima facie case is stated.

6

[Citation.]  Because [the mother's] parental rights are reinstated, it is in the minors' best interests that [the father's] parental rights are also reinstated."  (*In re A.L.* (2010) 190 Cal.App.4th 75, 80; see similarly *In re Mary G.* (2007) 151 Cal.App.4th 184, 208; *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 110.)  This does not affect the order terminating reunification services to Father.  (See *In re DeJohn B., supra,* at p. 110.)

## DISPOSITION

The juvenile court's summary denial of Mother's section 388 petition is reversed, and the court's permanency planning order, including the provision terminating the parental rights of Father and Mother, is vacated.  The juvenile court is directed to reconsider Mother's section 388 petition, based on the circumstances prevailing at the time of reconsideration.  If the court denies the section 388 petition, it shall hold a new section 366.26 hearing.

_____
Becton, J.*

We concur:

_____
Margulies, Acting P.J.

_____
Dondero, J.

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.