Filed 2/17/16  Tamara G. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TAMARA G.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>Real Party in Interest. | A146988<br><br>(Contra Costa County<br>Super. Ct. Nos. J15-00680, J15-00681,<br> J15-00682) |

Tamara G. (Mother) petitions this court for extraordinary writ review of a juvenile court order setting a selection-and-implementation hearing for her three sons.  She contends that the hearing was wrongly set because she (1) received inadequate reunification services from the Contra Costa County Children & Family Services Bureau (Bureau), (2) was wrongly denied a continuance, and (3) showed that she could reunify with her sons if the reunification period were extended.  In this abbreviated opinion,[1] we are not persuaded by these contentions and deny the petition.

---

[1] Because Mother's petition raises no substantial issues of law or fact, we resolve this cause by abbreviated form of opinion as permitted by California Standards of Judicial Administration, section 8.1.

1

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The Calaveras Health and Human Services Agency (Calaveras Agency) became aware of Mother and her family in 2010, and it received multiple referrals over the next four years about Mother's excessive alcohol use and its negative effect on her ability to raise her children. Mother was repeatedly offered, but refused, voluntary family-maintenance services.

Dependency proceedings began in Calaveras County when, in May 2014, the Calaveras Agency filed dependency petitions relating to Mother's three sons, then four years old, two years old, and six months old. The petitions alleged that Mother failed to provide safe and adequate care for her sons due to her severe alcohol abuse, and that Mother was recently arrested for willful cruelty to a child and disorderly conduct after her oldest son called 911 during an argument Mother was having with the maternal grandmother. According to the petitions, after Mother's arrest, the children were ordered detained and placed in protective custody because Mother was "too intoxicated to parent."

After a waiver of her right to a contested hearing, Mother submitted on the petitions, and the juvenile court sustained the allegations under Welfare and Institutions Code section 300, subdivision (b)[2] (failure to protect). The juvenile court considered the disposition reports and declared the three boys to be dependent children and ordered reunification services for Mother.

Mother began participating in a residential-treatment program, and in October 2014 she requested that her youngest son be allowed to live with her. All parties agreed to the request, and the juvenile court allowed it.

At the time of a review hearing held in December 2014, Mother had progressed in her treatment program, and the Calaveras Agency recommended that she continue to receive reunification services as to her older two sons and family-maintenance services as

_____

[2] All statutory references are to the Welfare and Institutions Code.

2

to her youngest son.  Mother was "very engaged" in parenting classes, she displayed "strong parental skills," she appeared "strongly bonded" to all three children, she was making progress in her case plan, and her youngest son was "thriving" in her care. Although the two older sons were doing well and showing resiliency, the middle son was moved to a new foster family in early December because his older brother was "modeling and engaging in inappropriate behaviors."  At the six-month review hearing, the juvenile court continued the three boys as dependent children and adopted the recommendations of the Calaveras Agency.

Mother successfully completed her six-month residential-treatment program and moved to transitional housing (a two-bedroom apartment) in Antioch, where she was assigned to an onsite case worker.  She also completed courses in anger management and parenting education, and she received regular counseling.  Because of Mother's progress in her case plan, the Calaveras Agency recommended in May 2015 that Mother be awarded custody of all three boys, that she receive family-maintenance services, and that the case be transferred to Contra Costa County because of Mother's relocation to Antioch.  At a 12-month review hearing on May 26, 2015, the juvenile court continued all three boys as dependent minors, ordered that the boys be placed with Mother and that the family receive family-maintenance services, and transferred the cases to Contra Costa County.  The transfer took place on July 1.

A social worker with the Bureau was assigned to Mother's case on July 10, and he first met with Mother in her home on July 24.  The social worker gave Mother (1) a parenting-resource handbook listing different resources and classes in Contra Costa County and (2) a mental-health handbook listing low-fee and no-fee clinics in the county. The social worker next met with Mother a few days later, on July 28, to get her signature on forms so that her children could start receiving different services.  Mother and her three children began to receive mental-health services on August 17, including individual therapy for the children.

Also in August, Mother contacted the social worker to report that her older son had touched one of his younger brothers inappropriately.  Mother agreed to a safety plan,

3

which included rules geared toward avoiding sexual abuse (i.e., barring family members from bathing together and from viewing any media with sexual content).  The social worker also arranged to have mental-health assessments done for all three children.  The two older boys were diagnosed with post-traumatic stress disorder.

Soon after Mother signed the safety plan, the Bureau began receiving reports that Mother was endangering the children's safety by inadequately supervising them.  Around two months after the cases were transferred, the Bureau filed supplemental dependency petitions (§ 387) alleging that Mother had left her three boys unattended in a second-story bedroom and that a neighborhood child who was playing with them fell out of the window.  All three boys were ordered detained and were removed from Mother's care.  Two days later, Mother signed a waiver of rights and entered a plea of no contest to the supplemental petitions.  The juvenile court then sustained the amended petitions and continued the children as dependents.  The court further ordered that the older child could be returned to Mother, with the two younger children receiving overnight visitation with Mother for a maximum of two days.

The older child was returned to Mother's care on October 7, and the two younger boys remained placed in separate foster homes.  The middle child received in-home behavioral support services, and the older child received individual and family therapy.

The assigned social worker met with Mother in early September and supervised a visit later that month, then went on medical leave from September 18 through October 5.  When he returned, he continued to supervise visitation, and he also again provided Mother with a list of mental-health resources.

The Bureau recommended in a disposition report dated October 14 that Mother be granted family-maintenance services as to the older child, who was still in her care, and family-reunification services as to the two younger children.  Soon thereafter, however, the Bureau became concerned about Mother's current boyfriend, a convicted felon who, according to the social worker, had a criminal history that posed a significant risk to the older child.  "[S]everal meetings" were held with Mother, including one in her home, and Mother agreed that her boyfriend would not be in contact with her older child.

4

Later in October, Mother reported that she had broken up with her boyfriend after he assaulted her, giving her a black eye and bruises on her arm. The social worker and an emergency social worker went to Mother's home to investigate and found a different man at the home with Mother and the older child. Mother reported she had a terminal illness that had not previously been disclosed to the Bureau, but her information was vague, and the social worker was not able to confirm the information. During the subsequent investigation into the domestic-violence incident, the assigned social worker heard reports of drinking in Mother's home, and he also learned that the man at Mother's home during his previous visit was a felon and was involved in the domestic-violence incident being investigated. The case manager at the transitional-housing complex stated she planned to notify Mother she needed to move out by early November because Mother had failed to attend four required weekly meetings with her case manager, failed to participate in an intake assessment, failed to attend regular counseling sessions, and drank alcohol. The social worker also learned that the older child recently had missed three days of school. The Bureau took the older child into protective custody after the Bureau alleged in a supplemental petition that Mother had been given notice she had to vacate her transitional housing because of her failure to participate in the program there.

Someone who identified himself as Mother's brother reported to the social worker that Mother was hospitalized after she attempted suicide in early November. The social worker was unable to immediately locate Mother to confirm the reports, but he spoke with a woman who identified herself as the maternal grandmother, who confirmed the suicide attempt. When the social worker was able to contact Mother, Mother confirmed that she had briefly started drinking again.

In a memo to the juvenile court filed on November 12, the Bureau stated it was no longer recommending that services be provided to Mother, and it recommended that a permanency-planning hearing be scheduled under section 366.26. At the beginning of the 18-month review hearing held that same day, Mother's counsel requested a 30-day continuance "due to the [Bureau] changing the recommendation." The juvenile court denied the request, finding a lack of good cause and noting that Mother had been aware

5

she was facing the expiration of the statutorily mandated 18-month limit on services. The social worker testified about the services that had been provided to Mother and his contact with her since the case had been transferred from Calaveras County.

Mother argued that she had not been provided reasonable services. The juvenile court disagreed, stating that "[t]he evidence is overwhelming that the [Bureau] provided more than reasonable services." It then followed the Bureau's recommendation, terminated services, and scheduled a selection-and-implementation hearing for March 10. Mother timely sought writ review.

## II.
### DISCUSSION

A. *The Legal Standards Governing the Setting of a Selection-and-implementation Hearing.*

The hearing at which the challenged findings were made was held about a week before the 18-month mark of the three boys' initial date of removal and thus was considered an 18-month review hearing. At an 18-month review hearing, the juvenile court shall order the return of dependent children to their parents unless the court finds, by a preponderance of the evidence, that the return of the children would create a substantial risk of detriment to the children's safety, protection, or physical or emotional well-being. (§ 366.22, subd. (a)(1).) If the children are not returned, "the court *shall order* that a hearing be held" under section 366.26 to select a permanent plan for the dependent children. (§ 366.22, subd. (a)(3), italics added.) The court shall not, however, order that a hearing be held under section 366.26 unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent. (§ 366.22, subd. (b)(3); Cal. Rules of Court, rule 5.708(m).[3])

B. *Mother Received Reasonable Services.*

Mother first briefly contends that insufficient evidence was presented that the Bureau provided reasonable services. We disagree. Mother focuses on the fact that the Bureau's social worker took medical leave and offered lists of service providers as a way

---

**3** All rule references are to the California Rules of Court.

to suggest he did nothing more. But in doing so, she ignores the fact that, even before her case was transferred to Contra Costa County, she had received substantial services that included being housed in transitional housing where she was assigned a case worker. She also ignores the full context of the frequent contact the Bureau's social worker had with Mother. As the juvenile court stated when rejecting Mother's argument below that she did not receive reasonable services: "I was amazed, quite frankly, that we have a social worker who's been able to devote that much time and energy and resources to one family, which I believe [the social worker] did. And I think the record is very clear on the services provided to this family." We agree with the juvenile court that reasonable services were provided to Mother.

### C. *Mother Has Not Shown That She Was Prejudiced by the Juvenile Court's Denial of Her Request for a Continuance.*

Mother next argues that the juvenile court erred by denying her request for a continuance because the Bureau had only recently changed its plan of continuing services for her. The authorities upon which she relies are plainly distinguishable or are inapplicable. (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1113 [social-services agency offered no evidence of any attempt to locate parent to provide notice of hearing where parental rights were terminated, which amounted to structural error requiring reversal]; *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 104 [same]; § 358, subd. (a)(3) [continuance required where social-services agency recommends bypass of reunification services under § 361.5, subd. (b), which was not an issue here]; rule 5.686(b) [court rule implementing § 358, subd. (a)(3)].)

In order to show reversible error, Mother must show she was prejudiced by the refusal to continue the hearing. (*In re James F.* (2008) 42 Cal.4th 901, 916-917 [harmless-error review applies to alleged constitutional errors in dependency proceedings; court questioned whether structural-error analysis would ever be appropriate in dependency appeals].) Except to assert generally that the denial of a continuance was "prejudicial and harmful" to her, Mother does not specifically articulate how she was harmed, and we find no harm on this record.

7

*D. There Was No Basis to Extend the Reunification Period Past 18 Months.*

Finally, Mother contends that the juvenile court erred in declining to extend services past the 18-month deadline to reunify because there was a substantial probability she could reunify with her children if she were given more time to do so. Nowhere does she set forth the requirements for providing services past the 18-month reunification period, let alone explain how they were met in this case. Section 366.22, subdivision (b) provides that a juvenile court may continue the case for up to six months after the 18-month review hearing if the court determines by clear and convincing evidence that the best interests of the child would be met by additional reunification services *and* the parent is making "significant and consistent progress in a court-ordered residential substance abuse treatment program," *or* the parent was a minor parent or nonminor dependent parent at the time of the initial hearing and is making significant and consistent progress in establishing a safe home, *or* the parent recently was discharged from incarceration. The statute plainly does not apply to Mother because she was not making progress in a residential treatment program and does not meet any of the other criteria. Furthermore, and in any event, no substantial evidence was presented that it was in the three boys' best interests for the case to be continued another six months. At the time of the 18-month review hearing, there was evidence that Mother had relapsed in her recovery, had potentially exposed her children to domestic violence, and had failed to establish a safe home. Mother's reliance on *In re Daniel G.* (1994) 25 Cal.App.4th 1205 is misplaced because that case involved a situation where, unlike here, the juvenile court found at the 18-month review hearing that the social-services agency had not provided reasonable reunification services. (*Id.* at p. 1208.)

The record shows that Mother loves her sons and made progress during the 18-month reunification period. But despite receiving and periodically gaining from reunification services, she resumed drinking, continued to expose her children to an unsafe environment, and was unable to reunify with her three sons who are entitled to permanence and stability.

8

III.

DISPOSITION

Mother's petition for an extraordinary writ is denied on the merits.  The decision is final in this court immediately.  (Cal. Rules of Court, rule 8.452(i), 8.490(b)(2)(A).) Mother's request for a stay of the juvenile court's March 10, 2016 hearing is denied as moot.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Dondero, J.

*Tamara G. v. Superior Court of Contra Costa County* (A146988)

10