Filed 7/14/25  In re S.J. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.J., a Person Coming Under the Juvenile Court Law. | B340821 (Los Angeles County Super. Ct. No. 24CCJP02707A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.J., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Charles Q. Clay, III, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The juvenile court exerted dependency jurisdiction over a five-year-old girl who was, at the time, under a temporary legal guardianship established in a probate proceeding.  The girl's father appeals, asserting that the juvenile court erred in not giving proper notice of the dependency proceedings to (1) the conservator for the girl's mother, (2) the attorney for the girl in the probate guardianship proceeding, and (3) the probate court overseeing that guardianship proceeding.  Because father lacks standing to assert some of these notice defects and because all of the defects are harmless, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The family*

S.J. was born to T.J. (father) and S.B. (mother) in July 2019.

#### B. *Mental health issues and domestic violence*

Both father and mother have significant mental health issues.  Father suffers from bipolar disorder and schizophrenia.

2

Mother suffers from schizoaffective disorder, bipolar disorder, auditory hallucinations and has had suicidal ideation.

Father and mother also have a history of engaging in domestic violence with one another.

### C. *Conservatorship over mother*

In July 2023, the probate court appointed maternal grandfather as a conservator over mother. In July 2024, the court appointed maternal aunt, E.B., as mother's conservator.

### D. *Temporary legal guardianship over S.J.*

In July 2023, the probate court appointed a different maternal aunt, S.W., as the temporary legal guardian over S.J. However, in the summer of 2024, S.W. indicated that she would not be able to continue the guardianship because mother, while receiving financial aid to pay for S.J.'s care, was not regularly forwarding that aid to S.W.; mother also started to feel that she and S.W. did not get along and mother preferred that maternal aunt E.B. serve as S.J.'s new guardian.

## II. Procedural Background

In light of the imminent termination of the temporary legal guardianship of S.J., the Los Angeles Department of Children and Family Services (the Department) on August 27, 2024, filed a petition asking the juvenile court to exert dependency jurisdiction over S.J. based on (1) father and mother's "history of engaging in violent altercations," which places S.J. at substantial risk of serious physical harm (thereby warranting the exercise of dependency jurisdiction under Welfare and Institutions Code section 300, subdivisions (a) and (b)[1]); (2) mother's "mental and emotional problems," which place S.J. at substantial risk of

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

serious physical harm (thereby warranting jurisdiction under section 300, subdivision (b)); and (3) father's "mental and emotional problems," which place S.J. at substantial risk of serious physical harm (thereby warranting jurisdiction under section 300, subdivision (b)).

Mother and father appeared at the initial detention hearing and the juvenile court appointed them counsel. The court also appointed dependency counsel for S.J. The Department interviewed maternal aunt E.B. and the attorney representing S.J. in the guardianship proceeding during its investigation, and summarized those interviews in its reports submitted to the juvenile court. At no point did anyone object to the Department's or the juvenile court's failure to give notice of the proceedings to maternal aunt E.B., to S.J.'s attorney in the guardianship proceeding, or to the probate court overseeing the guardianship proceeding.

After providing mother and father advance notice, the juvenile court held the combined jurisdictional and dispositional hearing on September 17, 2024, which mother and father attended alongside their appointed counsel. After entertaining argument from counsel, the court sustained the allegation regarding the parents' domestic violence under subdivision (b) of section 300 as well as the allegations regarding each parent's mental and emotional problems. The court ordered reunification services for father and mother.

Father filed this timely appeal.

## DISCUSSION

Because a parent's "interest . . . in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights," a parent may not be

4

deprived of that interest unless she is accorded due process. (*In re B.G.* (1974) 11 Cal.3d 679, 688-689 (*B.G.*).) Due process entitles a parent to "adequate notice and an opportunity to be heard" at each step of a dependency proceeding. (*Ibid.*; *In re Mia M.* (2022) 75 Cal.App.5th 792, 807-808.) Here, father does not argue that *his* due process rights were not honored because he does not dispute that *he* received adequate notice of the dependency proceedings in this case as well as the opportunity to be heard in the proceedings through his appointed counsel. Instead, he argues that the juvenile court's jurisdictional and dispositional orders must nevertheless be vacated because the Department failed to give adequate notice of the proceedings to (1) maternal aunt, E.B., in her role as mother's conservator, (2) S.J.'s attorney from the guardianship proceeding, and (3) the probate court presiding over that guardianship proceeding.[2]

I.      **Failure to Provide Notice to Mother's Conservator**

We reject father's claim that the Department's failure to give mother's conservator, maternal aunt E.B., notice of the dependency proceedings warrants reversal of the jurisdictional and dispositional orders, and do so for two reasons.

First, father lacks standing to assert that claim. We review questions of standing de novo. (*Sirott v. Superior Court* (2022) 78

---

[2]     The Department filed a motion to dismiss certain "portions of father's appeal," on the ground that father lacks standing to assert any lack of notice to mother's conservator and S.J.'s attorney in the guardianship proceeding. Because we do not generally dismiss *arguments* in an appeal, we deny the Department's motion. (See *Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 828-829 [partial dismissal is appropriate only if the resulting partial appeal is from severable portions of a judgment].)

Cal.App.5th 371, 380.)  Only a party whose "rights or interests are injuriously affected by [a] decision in an immediate and substantial way" may appeal that decision.  (*In re K.C.* (2011) 52 Cal.4th 231, 236.)  As a general matter, one parent in a dependency proceeding does not have standing to appeal orders that are erroneous solely as to the other parent *unless* the parents' interests interweave—that is, when the error as to the non-appealing parent adversely affects the appealing parent.  (*In re Desiree M.* (2010) 181 Cal.App.4th 329, 333 (*Desiree M.*); *In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193-1194.)  Defects in notice as to one parent generally do not interweave, and thus one parent lacks standing to contest defects in notice to the other parent.  (*Desiree M.*, at pp. 333-334 [mother lacks standing to contest adequacy of notice to children]; *Caitlin B.*, at pp. 1193-1194 [mother lacks standing to contest adequacy of notice to natural father of child]; cf. *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 102, 110 (*DeJohn B.*) [father may obtain reversal of order terminating parental rights due to lack of notice to mother, when mother contests notice on appeal and is entitled to reversal of that order, reasoning that leaving termination intact as to only father is not in the best interests of the children]; *In re J.R.* (2022) 82 Cal.App.5th 569, 581-583 [same, when mother is not able to raise issue due to her total lack of notice of the proceedings].)  Because mother in this case did have notice of the proceedings, participated through counsel, and elected not to appeal, father does not have standing to contest any defects in notice as to mother's conservator.

Second, any error in failing to provide notice to E.B., in her role as mother's conservator, was harmless beyond a reasonable doubt.  Although a parent "for whom a conservator has been

appointed" "shall appear" in court proceedings "by . . . [that] conservator" (Code Civ. Proc., § 372, subd. (a)(1)), the failure to order the conservator to appear "is a statutory error or 'mere irregularity,'" which does not "violate [the parent's] due process rights," and is evaluated for harmlessness. (*In re A.C.* (2008) 166 Cal.App.4th 146, 154, 159 (*A.C.*); see also *In re N.J.* (2024) 104 Cal.App.5th 96, 118 (*N.J.*).) Even if we apply the more stringent test for harmlessness by asking whether the absence of notice to E.B. was harmless beyond a reasonable doubt (*N.J.*, at p. 118), we conclude it was because the Department interviewed E.B. and included her statements in the report that the juvenile court considered, and there is no basis to conclude that "the result of the jurisdictional and dispositional hearing would have been" any different had proper notice been given to E.B. (*In re Daniel S.* (2004) 115 Cal.App.4th 903, 914.)

Father responds that any defect in notice is structural error that warrants reversal regardless of harmlessness, but this argument is refuted by the case law. In *In re Christopher L.* (2022) 12 Cal.5th 1063, our Supreme Court held that few errors qualified as "structural" in the juvenile dependency context, and could so qualify only if (1) the error undermined an interest other than accuracy of the result, (2) the effect of the error is too hard to measure or (3) the error invariably results in fundamental unfairness. (*Id.* at pp. 1075, 1077.) *Christopher L.* did not disturb earlier precedent that drew a line between cases in which notice was defective (and which do not treat those defects as structural error) and cases in which there was absolutely "no attempt" to notify a parent who was entitled to notice (and which treat the absolute failure to attempt to notify as structural error). (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 715-716 [where

7

agency makes "little to no effort" to provide notice; harmless error analysis applied]; *In re R.L.* (2016) 4 Cal.App.5th 125, 145-146; cf. *In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1115-1116 [where agency makes "no attempt" to provide notice to a parent, error is structural and reversible per se without examination of whether error was harmless]; *DeJohn B.*, *supra*, 84 Cal.App.4th at pp. 108-110 [same]; *B.G.*, *supra*, 11 Cal.3d at p. 689 ["total absence of notice in any form cannot comport with the requirements of due process"].) Because the juvenile court's failure to give notice to mother's conservator on the facts of this case does not further an interest independent of accuracy, does not defy measurement, does not invariably result in fundamental unfairness, and would otherwise be classified as a potential harmless error under pre-existing precedent, we reject father's argument that the error here is structural.

Father further responds that this case is akin to *N.J.*, *supra*, 104 Cal.App.5th 96, but the court in *N.J.* applied a harmless error analysis and concluded that the Department's failure to notify the mother's conservator—who was also the child's aunt whom the mother had designated to care for the child and who could provide "further information"—was prejudicial because it resulted in the termination of mother's parental rights through a placement that sidestepped the aunt's entitlement to relative placement (*id.* at p. 118); *N.J.* is factually inapt.

## II. Failure to Provide Notice to S.J.'s Attorney in the Guardianship Proceeding

We reject father's claim that the Department's failure to give S.J.'s attorney in the guardianship proceeding notice of the dependency proceedings warrants reversal of the jurisdictional and dispositional orders, and do so for three reasons.

First, father lacks standing to assert that claim as well. (*Desiree M.*, *supra*, 181 Cal.App.4th at pp. 333-334 [parent lacks standing to assert statutory notice right held by child].)

Second, father forfeited that claim by failing to object at any point to the lack of notice to S.J.'s attorney in the probate proceeding.[3] (E.g., *People v. Abilez* (2007) 41 Cal.4th 472, 521, fn. 12 (*Abilez*) [denial of notice resulting in alleged due process violation is forfeited for failure to object]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*), superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

Third, any error in failing to provide notice to S.J.'s attorney in the probate proceeding was harmless. Father argues that "counsel representing the child" is entitled to notice of a dependency petition (§ 290.2, subd. (a)(9)), but it is unclear that this provision applies to counsel representing the child *in proceedings other than the dependency proceeding* (see § 291, subd. (a)(8) [after initial hearing, notice shall be given to all "attorney[s] of record"]). Even if we assume the statute reaches S.J.'s appointed counsel in the guardianship proceeding (rather than the counsel she was appointed to represent her interests in the dependency proceeding) and accordingly conclude that the Department did not comply with this statutory notice requirement, any failure to give notice was harmless beyond a reasonable doubt because the Department interviewed S.J.'s appointed guardianship counsel, included that counsel's

---

3     Although father also did not object to the lack of notice to mother's conservator, that challenge is not subject to forfeiture because the juvenile court had a sua sponte duty to order mother's conservator to appear. (*A.C.*, *supra*, 166 Cal.App.4th at p. 155.)

statements in its reports, and the juvenile court considered those statements. There is no basis to conclude that the result of the jurisdictional or dispositional hearing would be any different had counsel received formal notice because there is no reason to believe that notice or further participation would have affected the factual basis supporting the allegations warranting exertion of jurisdiction, affected the court's removal order, or affected the content of the case plan for either parent.

## III. Failure to Provide Notice to the Probate Court Presiding Over the Guardianship Proceeding

We finally reject father's claim that the Department's failure to give the probate court presiding over S.J.'s guardianship proceeding notice of the dependency proceedings warrants reversal of the jurisdictional and dispositional orders, and do so for two reasons.

First, father forfeited that claim as well by failing to object at any point to the lack of notice to the probate court. (*Abilez*, *supra*, 41 Cal.4th at p. 521, fn. 12; *S.B.*, *supra*, 32 Cal.4th at p. 1293.)

Second, although a probate court that "appointed" a legal "guardian" for a child is entitled to notice of a dependency petition (§§ 290.1, subd. (a)(11), 290.2, subd. (a)(11)), the Department's failure to provide notice to the probate court was harmless beyond a reasonable doubt. The juvenile court was aware of the guardianship and had before it the guardianship paperwork; indeed, the impending end of the guardianship is what prompted the Department's filing of the dependency petition. There is no basis to conclude that the result of the jurisdictional or dispositional proceeding would be any different had the probate court that was about to end the legal

10

guardianship received formal notice of the dependency proceeding.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.

HOFFSTADT


We concur:


_____, J.

BAKER


_____, J.

MOOR


11