Filed 8/19/14  In re Gabriel S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re GABRIEL S., a Person Coming Under the Juvenile Court Law. | D065332 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD R.,<br><br>        Defendant and Appellant. | (Super. Ct. No. NJ14316) |

APPEAL from a judgment of the Superior Court of San Diego County, Carol Isackson, Judge.  Dismissed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Richard R. appeals the juvenile court order terminating parental rights to his biological son, Gabriel S. Richard contends Gabriel's relationship with his mother, Carolyn S., precluded the termination of Carolyn's parental rights and by extension his own. We conclude Richard does not have standing to appeal this issue. Accordingly, we dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Gabriel, now nine, was first taken into protective custody at age two when he and Carolyn were dropped off at an Orange County hospital. Carolyn was severely intoxicated and Gabriel appeared neglected. Gabriel was filthy and wearing only pants and a soiled diaper. The Orange County social services agency filed a petition in the juvenile court on Gabriel's behalf and the court took jurisdiction over Gabriel. Carolyn told social workers either Richard or another man could be Gabriel's father; neither was listed on Gabriel's birth certificate. Richard submitted to paternity testing confirming he was Gabriel's biological father, but did not maintain contact with the Orange County agency or participate in the dependency proceedings. Carolyn engaged in drug and alcohol treatment and other services and was reunified with Gabriel after 18 months.

Less than two years after the termination of the dependency, Gabriel was taken into protective custody again, this time in San Diego County. The San Diego County Health and Human Services Agency (Agency) filed a Welfare and Institutions Code section 300, subdivision (b)[1] petition on Gabriel's behalf. The petition alleged Carolyn

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

used narcotics and alcohol to excess and was discovered lying in her bed "in a zombie like state" unable to care for Gabriel. Richard's whereabouts were initially unknown, but before the jurisdiction and disposition hearing he was located in an Oklahoma prison on a California conviction. At the time the petition was filed in March 2012, a criminal protective order prohibited Richard from any contact with Gabriel. The order was set to expire in December 2019. Carolyn told the Agency's social worker Richard had been arrested after severely beating her in front of Gabriel and that he was sentenced to eight years in prison for that assault.

The juvenile court removed Gabriel from Carolyn's custody and placed him in a licensed foster home. At the jurisdictional and dispositional hearing, the court ordered reunification services for Carolyn, but not Richard. The juvenile court also issued an order prohibiting Richard from having any contact with Gabriel based on the existing restraining order. Gabriel did not know Richard and believed another man was his father. Carolyn was initially successful in her reunification plan. In May 2013, the juvenile court placed Gabriel in her care and ordered family maintenance services.

Six weeks later though, Carolyn faltered. The Agency received a referral alleging she was drinking and suicidal. Carolyn contacted the Agency's social worker admitting she had relapsed and that she planned to take Gabriel to his former foster parents' home. Shortly thereafter, Carolyn's landlord found her unresponsive and she was taken to the hospital in an ambulance. As a result, the Agency placed Gabriel with his former foster parents and filed a supplemental petition under section 387 alleging Carolyn was no longer able to provide Gabriel with adequate care and supervision.

3

In advance of the jurisdiction and disposition hearing on the petition, Carolyn told the Agency's social worker she wanted Gabriel's foster parents to take guardianship of him. At the August 12, 2013, hearing, the court found Gabriel's placement with Carolyn was no longer appropriate, removed him from Carolyn and, finding Carolyn had not made substantive progress with the case plan, terminated her reunification services and set a permanency planning hearing.

After Gabriel was removed from Carolyn's care, she initially visited him regularly and talked with him on the phone frequently.[2] As time went on, however, Carolyn began to miss visits and during at least one visit appeared intoxicated. As a result, her visitation was terminated. Gabriel's foster family also reported his behavior seemed to worsen after contact with Carolyn.

The contested permanency planning hearing occurred on January 24, 2014. At its conclusion, the juvenile court issued its order terminating Carolyn's and Richard's parental rights. The court found it was likely Gabriel would be adopted, that adoption was in Gabriel's best interests and that Carolyn had not shown the beneficial parental relationship exception applied. Both Carolyn and Richard filed notices of appeal. Shortly after briefing was completed, Carolyn filed a notice of abandonment of appeal

---

[2] Before the permanency planning hearing, Gabriel's foster parents decided they were no longer able to care for Gabriel. As a result, the Agency filed a second section 387 petition seeking the juvenile court's approval of Gabriel's placement with new foster parents. Gabriel was placed with a new foster family and by the time of the hearing was thriving in his new home and the foster family wanted to adopt Gabriel.

and request for dismissal. We dismissed Carolyn's appeal pursuant to California Rules of Court, rule 8.316 and only Richard's appeal proceeds.

## DISCUSSION

Richard does not contend his own parental rights were wrongly terminated. Rather, he argues only that the juvenile court should have found the beneficial parent-child relationship exception to adoption under section 366.26, subdivision (c)(1)(B)(i) applied to preclude termination of Carolyn's parental rights. He asserts that if this court agrees the exception applies, his own parental rights must also be reinstated.

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal." (*In re K.C.* (2011) 52 Cal.4th 231, 236.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*Ibid.*) "To determine whether father is aggrieved by the juvenile court's order . . . , we must therefore precisely identify father's interest in the matter." (*Ibid.*)

Richard is a biological father only. His rights in Gabriel's dependency proceeding were "limited to establishing his right to presumed father status . . . ." (*In re A.S.* (2009) 180 Cal.App.4th 351, 362.) Richard did not have an absolute right to seek custody of Gabriel or to reunification services. And, unlike Carolyn, because Richard "did not demonstrate a willingness to accept full parental responsibilities . . . , the court was not

5

required to make a particularized finding of unfitness or detriment before terminating his parental rights. . . ."  (*Ibid.*)

Richard asserts the juvenile court's order terminating Carolyn's parental rights supports his standing to appeal that order.  We disagree.  Richard's rights in this case were limited to elevating his parental status.  Richard never asserted this right and does not contend he would pursue his rights even if the juvenile court's order is reversed.  In fact, a restraining order prohibiting Richard from contacting Gabriel is in place until 2019, and Richard is not scheduled to be released from custody until 2017.  Richard's limited interests do not interweave with the interests of Carolyn in this proceeding, with whom Richard has no continuing relationship.

Richard cites *In re DeJohn B.* (2000) 84 Cal.App.4th 100 in support of his argument that he has standing to press Carolyn's rights.  He argues under *In re DeJohn B.* if we reverse the court's order based on Carolyn's beneficial relationship with Gabriel, we must also reverse the termination of parental rights as to him, therefore he has standing to pursue that issue.  We reject this circular argument.  In *In re DeJohn B.* the court of appeal reversed the termination of mother's parental rights on her *direct appeal* on the social service agency's failure to provide her with notice of the proceedings.  (*Id.* at p. 102.)  The court concluded it was in the best interests of the children to also reverse the order as to the father since the possibility remained the children could be reunited with mother.  (*Id.* at p. 110.)  The court saw no reason to leave the children without the benefits of a father at that point in the case.  (*Ibid.*)  Here, by dismissing her appeal

6

Carolyn has accepted the trial court's termination of her parental rights and there is no possibility she will reunify with Gabriel.

Richard also cites *In re L.Y.L.* (2002) 101 Cal.App.4th 942. That case, however, addresses a parent's standing to raise the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(B)(iv). A parent has standing to raise that issue because it is the parent that has the burden of proving the exception applies. (*In re L.Y.L.,* at pp. 948-950.) In this regard, the parent's rights and interests are statutorily interwoven with the rights and interests of the child in having a sibling relationship. Richard's limited rights as a biological father are not similarly intertwined with Carolyn's interest in preventing termination of her parental rights.

In sum, Richard was not directly and injuriously affected by the court's ruling that Carolyn did not establish the beneficial parent-child relationship exception to adoption applied. Richard does not have standing to appeal this issue, which affects only Carolyn's interests.

## DISPOSITION

The appeal is dismissed.


O'ROURKE, J.

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.