Filed 9/7/16  In re K.R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.R., A Person Coming Under Juvenile Court Law. | B268955 |
| | (Los Angeles County Super. Ct. No. DK04840) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JESUS R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Victor H. Greenberg, Judge.  Reversed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickam, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Jesus R. appeals from an order denying his Welfare and Institutions Code section 388[1] petition and terminating his parental rights as to his daughter K.R., pursuant to section 366.26. He argues the court erred in employing a harmless error analysis in denying his section 388 petition and that the court's finding that respondent, the Department of Children and Family Services (Department), failed to make reasonable efforts to locate him and provide notice constituted a denial of due process that compels reversal and remand of the juvenile court's order. We agree and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

On May 2, 2014, the Department filed a section 300 petition on behalf of newborn K.R. based on her mother's history of illicit drug use and positive toxicology screen for amphetamine while pregnant with K.R. A detention hearing was held the same day. The court found Jesus R. to be the alleged father of K.R. and that notice of proceedings had been given to all appropriate parties as required by law. K.R. was ordered detained and placed in shelter care. The Department was ordered to demonstrate that it had exercised due diligence in attempting to locate Jesus R. The matter was continued for an adjudication/disposition hearing.

In its jurisdiction/disposition report, the Department recommended that the court find that it had "exercised due diligence in attempting to locate [K.R.'s] absent father and there is clear and convincing evidence that the whereabouts of the father remains unknown." On June 6, 2014, K.R. was declared a dependent, removed from parental custody, and the Department was ordered to provide her mother with family reunification services. The court found that notice of proceedings had been given as required by law. The court did not offer Jesus R. family reunification services because he was only "an alleged father to the minor."

---

[1]     Subsequent statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

In its December 5, 2014 status review report, the Department stated that Jesus R. had "not made any efforts to make contact with [the Department] or with the caregivers during the past period of supervision. [Jesus R.] is reportedly incarcerated; however, a search of the California Department of Corrections and Rehabilitations (CDCR) indicates numerous matches for the name, Jesus [R.] and [the Department] does not . . . have confirmation of what [Jesus R.'s] birth date is. The Court is respectfully referred to the attached copy of the printout from the CDCR inmate search page. In the event that [Jesus R.] makes contact, [the Department or social worker] will follow up and make arrangements for a safe and monitored visitation for the child, [K.R.]." The CDCR search page that the Department attached contained eight names. Based on the admission date listed next to each name, only three of the eight names could have been the father of seven month old K.R. (the remaining men listed were admitted to CDCR before 2007). At the December status hearing, the court found that notice of proceedings had been given as required by law.

In its January 9, 2015 interim review report, the Department again recommended that the court find that it had exercised due diligence in attempting to locate Jesus R. and that there was clear and convincing evidence that the whereabouts of Jesus R. remained unknown. At the January 9 hearing, the court found that notice of proceedings had been given as required by law. The court also found that mother and father (Jesus R.) were not in compliance with the case plan, terminated reunification services for mother, noted that father had not been offered reunification services, and continued the matter for a section 366.26 hearing, terminating parental rights. On April 15, 2015, the Department submitted an application for an order for publication of citation in the Los Angeles Bulletin, as a means to provide notice to Jesus R. of the upcoming section 366.26 hearing. The court granted the order on April 28, 2015.

At the section 366.26 hearing on May 7, 2015, the court ordered the Department to present evidence of due diligence in attempting to locate Jesus R., and stated that a location for the father had been provided—according to mother, Jesus R. was incarcerated at Susanville State Prison, and the court had his booking number. The court

3

continued the matter to June 11, 2015 and ordered a statewide removal for Jesus R. (the procedure for father to appear while in custody). On June 11, an attorney was present to represent the father but stated that proper notice had not been provided to the father and he had not been brought in for the hearing. The court agreed that proper notice was not provided and continued the matter to June 15 because the bailiff indicated father had been brought to a Los Angeles county jail. On June 15, 2015, Jesus R. made his first appearance and his attorney made a special appearance, noting that father had not been given notice of the hearing. In response to the court's questions, Jesus R. stated that he had been convicted of fraud and had been serving time in prison since December 2013. He currently was housed at Susanville State Prison and expected to be released on September 22, 2015. The court asked Jesus R. if he would submit to a DNA test and he responded, "yes." The court said it would continue the matter to July 9, 2015, to allow time for the DNA testing and set the section 366.26 hearing for August 6, 2015.

On July 9, Jesus R.'s attorney specially appeared on his behalf (Jesus R. was not present). After being advised that the DNA test was still pending, the court asked: "we're at [a section 366.26 hearing]. Is the DNA test going to really affect the outcome of this case at this point?" "If [Jesus R.] is found to be the father, was he involved in this case from the beginning?" Jesus R.'s attorney responded, "No. But if he's found to be the father, I'm going to have to do an *Ansley* motion[2] because he didn't have notice. But he says he hasn't been tested yet either . . . ." Jesus R.'s attorney explained that Jesus R. told him he had not yet received a DNA test. The court replied, "[o]kay. He wants to find [out]—okay, that makes sense." The court ordered the Department to ensure Jesus R.'s DNA was tested and continued the matter to August 6, 2015.

On August 6, 2015, the court called the matter for a section 366.26 hearing. The DNA results were available and the court made a finding that Jesus R. was K.R.'s

---

[2]     In *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 481 (*Ansley*), the court held that a parent "claiming lack of due process notice of a juvenile dependency petition can challenge the resulting dependency judgment by filing a petition pursuant to section 388 in the same dependency proceedings."

biological father. Jesus R.'s attorney specially appeared and asked for a continuance to file an *Ansley* motion. The court granted the continuance and set the matter for hearing for August 28. On August 28, the court granted a hearing on Jesus R.'s section 388 petition (*Ansley* motion), in which Jesus R. argued that notice had not been proper and requested that the court vacate all dispositional findings and orders related to K.R. Over the objection of both parents, the court granted, "de facto parent" status to K.R.'s foster parents, providing them an opportunity to participate in the section 388 hearing. The court continued the matter to October 2, 2015 for a hearing on the section 388 petition and the termination of parental rights, pursuant to section 366.26.

The matter was continued again to November 6, 2015 at that hearing. The court first addressed Jesus R.'s section 388 petition. It reasoned that "[t]he record is clear that at the jurisdictional hearing, the Department reported that the mother in this matter indicated that the father was incarcerated somewhere in Los Angeles County, but that there was not a birth date that she was provided. Within a week, there were relatives at the hearing. I don't know that having the relatives in here at the hearing without any additional evidence allows the court to impute, [knowledge] of this child's existence to the father. However, there appears to have been no attempt to get the birth date or the location from those relatives by the Department despite the fact that those relatives did appear. In addition, despite the Department not following those reasonable leads—that reasonable lead, they were able to narrow the location of the father to five names. And that's indicated in the report as well. And at that point, the Department took no further action for almost a year. They didn't send a letter, they didn't attempt to communicate with these five gentleman. They did nothing. It appears to the court that the due diligence, the efforts to locate by the Department were insufficient. And the court does find that the Department failed to properly search for the father."

The court explained that it also needed to conduct an analysis as to whether Jesus R. "stepped forward at the earliest opportunity and took proper action to establish a relationship and accept responsibility for [K.R.]," whether the best interest of the child required the section 388 petition be denied, and the extent to which there was actual

5

prejudice. The court found that Jesus R. "failed to show . . . or establish that he took sufficient action to step forward at the earliest opportunity to create and/or maintain a relationship with [K.R.] and failed to take proper action to take responsibility for the child when he had the opportunity to do so." The court also found that it was not in K.R.'s best interest to grant the section 388 petition because the court found "father has shown a lack of interest and commitment to the minor. The minor[has] been with [her] de factor parents for a very long time, essentially [her] entire life. And the child[has] a need for permanency." Accordingly, the court denied the section 388 petition. The court continued the section 366.26 hearing in order to allow the mother, who was in custody, to be brought in. The court ordered no visitation for Jesus R.

On November 13, 2015, the court found that it would be detrimental for K.R. to be returned to her parents and that K.R. was adoptable and terminated both parents' parental rights.

This timely appeal followed.


## DISCUSSION

### I

As a preliminary matter, the Department argues that any defect in notice was forfeited by Jesus R.'s acknowledgement of the juvenile court's jurisdiction, making general appearances, and requesting affirmative relief. We find this argument is without merit.

The evidence in the record does not support a finding that Jesus R.'s attorney made a general appearance prior to filing the section 388 petition, requested affirmative relief prior to challenging the court's jurisdiction, or consented to the court's jurisdiction. At Jesus R.'s first appearance, his attorney informed the court he was making a special appearance because Jesus R. "had no prior notice." The Department argues that Jesus R. sought affirmative relief by requesting a DNA test at that hearing. The record shows, however, that the court asked him if he would submit to DNA testing. At the next scheduled hearing, Jesus R.'s attorney again specially appeared, and after the court was

6

informed the DNA testing was pending and questioned whether the results would affect the outcome of the case, Jesus R.'s attorney responded "if he's found to be the father, I'm going to have to do an *Ansley* motion because he didn't have notice." At the next hearing, on August 6, 2015, the court found that the DNA test established Jesus R. was K.R.'s biological father and Jesus R.'s attorney stated that "I still need to specially appear because . . . I need to check notices now, since he's a biological father. I need to do an *Ansley* motion." By the next hearing, Jesus R. had filed the 388 petition, challenging the court's jurisdiction because of lack of notice.

*In re B.G.* (1974) 11 Cal.3d 679, cited by the Department, is distinguishable. In that case, the court found that at the mother's initial appearance, she did not seek (through counsel) to terminate jurisdiction or challenge the order establishing jurisdiction. (*Id.* at p. 689.) Rather, the mother filed "points and authorities asking the court to transfer custody to her, thereby impliedly recognizing the jurisdiction of the court to issue a dispositive order." (*Ibid.*) Additionally, the mother expressly waived any defect in notice because "[w]hen the foster parents subsequently attacked the court's jurisdiction by a motion to dismiss and by a petition for habeas corpus, the mother stipulated that the juvenile court did have personal jurisdiction over her after July 1969." (*Ibid.*) *In re Gilberto M.* (1992) 6 Cal.App.4th 1194, cited by the Department, also is distinguishable. In that case, the court found the father had forfeited his challenge to jurisdiction based upon lack of notice by participating in a status hearing and not raising the issue of lack of notice until his appeal. (*Id.* at p. 1200.) Here, Jesus R. filed a section 388 petition, challenging lack of notice, prior to participating in the section 366.26 hearing.

II

Jesus R. argues that the juvenile court's finding that the Department failed to make any reasonable efforts to locate him requires reversal of the orders denying his section 388 petition and terminating parental rights.

"[T]he state, before depriving a parent of [his parental] interest, must afford him adequate notice and an opportunity to be heard. [Citations.]" (*In re B.G., supra,*

7

11 Cal.3d at pp. 688-689.)  "It is settled beyond dispute that if a parent proves the absence of due process notice to him in juvenile dependency proceedings a 'fatal defect' exists in the jurisdiction of the juvenile court to have entered the dependency judgment. (*In re B.G.*[, *supra*,] 11 Cal.3d [at pp.] 688-689 . . . .)" (*Ansley, supra,* 185 Cal.App.3d at p. 483.)

Section 388, subdivision (a)(1) provides:  "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, modification of reunification services, custody, or . . . termination of jurisdiction, . . . the court shall order that a hearing be held . . . ."  (§ 388, subd. (d).)

In *Ansley, supra,* 185 Cal.App.3d at page 490, the court (this division) explained that pursuant to section 388, the best interest of the child analysis "refers to the initial, prehearing judicial determination of probable cause to set the section 388 petition for hearing, not to the ultimate criterion for granting the motion on its merits."  In this case, and as the court found in *Ansley*, because the juvenile court approved the section 388 petition for hearing, the best interest of the child analysis was not relevant to the merits of the petition.  Moreover, in *Ansley,* the court explained that "even if the [best interests of the child] were applicable, a judgment that is proven void due to lack of due process notice suffers from a fatal jurisdictional defect.  It may not be perpetrated on the rationale that setting it aside would not, in the court's view, be in the best interests of the child.  (*In re B.G., supra,* 11 Cal.3d 679, 688-689; *City of Los Angeles v. Morgan*[ (1951)] 105 Cal.App.2d [267,] 730-731.)" (*Ansley, supra*, at p. 490.)

In *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 109-110 (*DeJohn B.*), the court explained that "[o]ur Supreme Court teaches that a dependent minor has a compelling right to a stable and permanent placement in a family unit which will allow the caretaker

8

to make a full emotional commitment to the child" but "[w]e must evaluate that right in the context of [a parent's] compelling interest as a parent and . . . due process right to be notified of the proceedings. . . . 'The county has a constitutional responsibility to use due diligence to notify absent parents before depriving them of that "most basic of civil rights"—the care, custody, and companionship of their children. [Citation.]' [Citation.] Where [a Department] fails even to make an effort to provide [a parent] the procedural safeguard of notice, reversal is mandated."

Similarly, in *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 558 (*Judith P.*), the court concluded that "the failure to give Mother the minimum mandated 10 days' notice [of the status report] was a structural error, and that the per se reversible error standard applie[d]." The court explained that it was required to reverse the order terminating reunification services and setting a section 366.26 hearing because "[t]he lack of reasonable notice was not only a violation of the statute, but also a violation of constitutionally required due process." (*Ibid.*)

And in *In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1116 (*Jasmine G.*), the court made "explicit what is implicit in *DeJohn B*—the failure to attempt to give a parent statutorily required notice of a selection and implementation hearing is a structural defect that requires automatic reversal. It denies a parent the opportunity to confer with [his or] her attorney, prepare [his or] her case, or defend against the loss of parental rights. Without this, we cannot say the loss of parental rights—or the hearing—is fundamentally fair. The absence of any reasonable attempt to give notice goes well beyond trial error. It is not merely a mistake that hinders a party's ability to present the case effectively, but rather a flaw in the systemic framework that denies that party the opportunity to be heard at all. It goes to the basic fairness of the structural scheme. Since this was structural error, we do not consider whether it was also harmless."

Respondent relies on *In re Justice P.* (2004) 123 Cal.App.4th 181 and *In re A.D.* (2011) 196 Cal.App.4th 1319, 1327 to support its argument that lack of notice is susceptible to a harmless error standard of review, and that the juvenile court was correct

9

in determining that, although the Department had failed to properly search for Jesus R., granting the section 388 motion was not in the best interests of the child.

*In re Justice P.*, *supra*, 123 Cal.App.4th at page 192 is distinguishable because that case addresses whether a section 388 petition based on a notice violation merits an evidentiary hearing as a matter of law, regardless of whether there is a prima facie showing that the best interests of the child will be promoted. But here, the court found that an evidentiary hearing was merited, so the prehearing determination was not at issue.

*In re A.D.*, *supra*, 196 Cal.App.4th at page 1327 is the only case we have found to squarely hold that a lack of notice is amenable to harmless error analysis. In that case, the court recognized *In re De John B.*, *In re Jasmine G.*, and *Judith P.*, but cited *In re James F.* (2008) 42 Cal.4th 901 (*James F.*) for the proposition that "[m]ore recently, however, the California Supreme Court has cautioned against using the structural error doctrine in dependency cases." (*In re A.D.*, *supra*, at p. 1327.) In *James F.*, the Supreme Court considered the narrow issue of whether "error in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding is trial error that is amenable to harmless error analysis rather than a structural defect requiring reversal of the juvenile court's orders without regard to prejudice." (*James F., supra,* 42 Cal.4th at p. 915.) The court noted that "significant differences between criminal proceedings and dependency proceedings provide reason to question whether the structural error doctrine that has been established for certain errors in criminal proceedings should be imported wholesale, or unthinkingly, into the quite different context of dependency cases. [Citations.]" (*Id.* at pp. 915-916.) To support its holding that the "juvenile court's error in the process used for appointment of a guardian ad litem for a parent in a dependency proceeding is a form of trial error that is amenable to harmless error analysis," the court explained that appointment of a guardian ad litem for the father did not strip him of his right to participate in the action, and that the appointment of the guardian (the purpose of which is to protect a parent's rights) did not undermine the integrity of the dependency proceedings. (*Id.* at p. 919.)

10

Not only did the Supreme Court narrowly tailor its holding in *James F* to the appointment of a guardian ad litem, its reasoning does not support application to a case involving a complete lack of notice, and of initially any initial effort to provide it. The court questioned whether the structural error doctrine should be imported wholesale into dependency cases but did not find that structural error should never apply in dependency cases. And, unlike the procedural error at issue in *James F.*, the Department's lack of effort in locating the child's father, Jesus R., and the consequent complete lack of notice to him of the proceedings at issue here constituted a violation of his constitutionally protected due process rights. (*In re B.G.*, *supra*, 11 Cal.3d at p. 689.)

Here, the juvenile court found that as early as the jurisdictional hearing, the Department knew that the father had been incarcerated somewhere in Los Angeles County, and despite the fact that within a week, father's relatives were at the hearing, there was no attempt to get father's birth date or the location of where he was incarcerated from those relatives. Although the Department did not follow these reasonable leads, it was able to narrow the location of the father to three names but took no further action for almost a year. The Department did not send a letter or even attempt to communicate with the three men. Rather, the Department did nothing. For these reasons, the trial court found that the Department's efforts to locate the father were insufficient. We also note that despite the Department's lack of efforts to locate Jesus R. and provide him with notice of the proceedings, the minute orders from May 2, 2014 through January 9, 2015 reflect the court's findings that proper notice of the proceedings had been given as required by law; it was not until May 7, 2015, that the court ordered the Department to present evidence of due diligence in attempting to locate Jesus R.

It is unfortunate that this case progressed to the hearing terminating parental rights before the Department made any reasonable effort to locate Jesus R. and that, as a result, the minor has now been in foster care, without a permanent placement, for over two years. But the absence of due process notice to Jesus R. is a "'fatal defect'" requiring reversal. (*Ansley, supra,* 185 Cal.App.3d at p. 483.)

11

## DISPOSITION

Because the Department's efforts to locate and provide Jesus R. with notice were unreasonable, the order terminating parental rights and directing the minor be placed for adoption is reversed. The case is remanded for proceedings consistent with this decision.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

                        EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.