Filed 12/3/20  In re J.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIANA G.,<br><br>    Defendant and Appellant. | F081327<br><br>(Super. Ct. No. JJV072025A, JJV072025B, JJV072025C, JJV072025D, JJV072025E)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from order of the Superior Court of Tulare County.  John P. Bianco, Judge.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, John A. Rozum and Jason Chu, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P.J., Snauffer, J. and De Santos, J.

Adriana G. (mother) appeals from an order after a Welfare and Institutions Code section 366.26[1] hearing terminating her parental rights to her five children. Jaime G. (father) did not appeal.

Mother contends for the first time on appeal that she did not receive statutorily proper notice of the continued section 366.26 hearing. Mother contends this constitutes "structural" error, and therefore requires automatic reversal.

Finding harmless error, we affirm.

## STATEMENT OF THE FACTS AND PROCEDURE

On January 8, 2019, mother, father and their five children, ranging in age from seven months to eight years, came to the attention of the Tulare County Health and Human Services Agency (agency) when they were discovered living in a tent in a field behind a fast food restaurant. The children were muddy and had head lice. Father told the police officer who located them that they had recently moved from Nevada and were staying with his sister until they had an argument and left. Mother and father stated they had no family to provide support.

At an agency team decision meeting the following day, both mother and father denied domestic violence or drug use, although both refused to spot test.

*Detention*

A section 300 petition was filed, alleging mother and father failed to provide the children with adequate food, clothing, shelter and medical care due to their transient lifestyle.

At the January 11, 2019, detention hearing, both mother and father were present and were provided with JV-140 address forms and ordered to update the agency with any changes in address or phone number. The juvenile court emphasized to mother and

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

father the importance of maintaining contact with the agency. Mother completed the form, designating an address on Highland Street in Visalia as her mailing address. Mother and father were ordered to drug test that day. They were advised that, if they tested negative, they would be relieved from further testing. If not, they were ordered to attend a substance abuse assessment. A jurisdiction and disposition hearing was set for March 15, 2019.

An amended section 300 petition was filed March 11, 2019, alleging father physically abused one of the children by striking him on the head, face and stomach, leaving visible scars on his face. The other children were alleged to be at risk of similar harm. The petition also alleged substance abuse and domestic violence, as well as a severe risk of emotional damage to two of the children, who were observed inflicting self-harm and smearing and eating feces.

*Jurisdiction/Disposition*

The agency's report for the jurisdiction/disposition hearing recommended mother receive reunification services, but father be denied services pursuant to section 361.5, subdivision (b)(13). It was also recommended that the Interstate Compact on the Placement of Children (ICPC) be ordered for a maternal relative in Nevada.

The report detailed numerous instances of the children's behaviors in foster care. One child smeared and ate her feces, was very sensitive to having her diaper changed, and stated "Chucky" and "daddy" "hurt her." One child was very reluctant to speak, and was parentified, making sure all the other children had their food before she would eat. She did state that, when they were with mother and father, they did not own a toothbrush or hairbrush and wore the same clothing over and over. All the children were hoarding food, except for the baby.

One of the children was waking up multiple times at night with nightmares. The children reported seeing father hit mother often. When the children were taken to a fast food restaurant, one of the children crawled under the tables and proceeded to eat the

3.

food dropped on the floor. The two oldest children were receiving expedited mental health assessments.

When the social worker met with mother and father at the end of January 2019, they were still living in the tent in a field. Both were dirty and had an "unexplained chemical odor." Father admitted that he physically disciplined the children and that he had taught the oldest child, then eight years old, to help care for her siblings to teach her responsibility.

Father at first denied any domestic violence. But when confronted with information about an incident in November of 2018 in which mother had to go to the hospital after father hit her, father acknowledged that it had happened but claimed it was an isolated incident.

When spoken to outside father's presence, mother explained that the scars on her face were from "picking" and not from domestic abuse. Mother, who was 29 years old, stated that she started using marijuana at age 15 and methamphetamine at 18. She denied ongoing methamphetamine issues, but that her frequent use of methamphetamine began just recently.

Mother had an "on and off" relationship with father for nine years. Mother chronicled their transient life, between Nevada and Tulare County, sometimes with father and sometimes on her own. The domestic abuse incident in November of 2018 occurred in a motel room when father beat her up after learning she had talked to another man. Mother admitted both she and father were under the influence of methamphetamine at the time and that the children were present, but mother insisted they did not witness it. Father was arrested and released. Mother explained that she stays clean and sober when away from father.

Mother insisted that the last time they used drugs was the day before the children were detained. She denied "ongoing" domestic violence. When asked why the children

4.

were afraid of "Chucky," mother stated that he was a character in a movie the children were not supposed to watch but did anyway.

The social worker spoke with mother's family in Nevada on January 30, 2019. Mother's relatives were very concerned for the safety of the children, due to mother and father's ongoing issues with domestic violence and substance abuse. The relatives tried to care for mother and the children by taking them in and enrolling them in school, but mother would not let the relatives take the children to doctor and dental visits. The children hoarded food. In one instance in September of 2018, when mother was under the influence, she hit and yelled at the children and did not want them near her. The oldest child told the relatives that, when father hits mother, she takes the other children and hides with them under a blanket to keep them from seeing it. The relatives had offered mother help with the domestic violence and substance abuse, but she refused.

When asked, the oldest child said she would like to return to her cousins and grandmother in Nevada, but worried about mother and father not having money, a job, or home. The children were able to describe graphic scenes involving "Chucky" in the movie, which they watched while living with mother and father.

Mother and father attended visits with the children, but reeked of urine, feces, and body odor. When asked to clean up before visits, they agreed, and reported that they were now camping in a different location, as they had been asked by the police to move from the field.

On February 8, 2019, mother and father were reminded to register for random drug testing and were provided the necessary information to do so. The social worker later learned that, at a visit that day, father took one of the children's dolls, twisted its head around, and told her it was "Chucky." Mother attempted to stop father, but the child had nightmares that night.

On February 12, 2019, mother's relatives expressed a desire to have relative placement of the children while mother and father completed services.

5.

Mother was asked but refused to sign a release for the children's mental health assessments.

The report summarized multiple instances of the children's concerning behaviors reported by the children's caregivers, including multiple instances of self-harm, harm to the other siblings, and the fact that the children thought it funny to hurt each other and family pets. One of the children had described an incident in which father took a shotgun and shot the child's dog.

Mother and father continued to arrive at visits with poor hygiene. When it was suggested on March 1, 2019, that they go to a shelter, mother was interested but father was not. Father was under the influence and refused to say when he had used drugs; mother stated they had both used two days prior. Mother and father claimed problems with their Medi-Care as an explanation for why they had not yet attended the alcohol and drug assessment, but said they had an appointment at the end of the month. Both mother and father tested positive for methamphetamine when asked to spot test.

On March 4, 2019, mother and father arrived at the visit much cleaner, but mother had visible bruises on her face. Mother and father had missed three of the scheduled 11 visits since detention. During visits, neither mother nor father placed boundaries on the children. Mother did most of the holding and cleaning of the baby. Mother continued to be very timid, and only engaged with the children when they spoke to her. The oldest child asked mother and father at each visit whether they had a job or a home, and asked if they had eaten before she would take any of the snacks they brought with them. Father dozed off during visits.

A contested jurisdictional hearing was requested and set for April 24, 2019. Prior to the hearing, the agency filed an addendum report which stated that mother and father had not yet started any services, although both mother and father admitted continued drug use.

On April 12, 2019, mother arrived later for a visit, which was cancelled. She arrived without father and had fresh bruises on her cheek, which was swollen. Her left eye was completely blood shot and she had other bruises on her face and arms in various stages of healing. Mother would not say how she received her injuries.

The report included continued instances of the mother and father being unable to manage the children during visits and of the children harming animals in the foster home. The oldest child's teacher requested school-based therapy as the child refused to speak.

The April 24, 2019 jurisdictional hearing was continued to May 8, 2019. Prior to the hearing, the agency filed a second amended section 300 petition, adding the allegation that mother failed to protect one of the children from physical abuse by father.

An addendum report filed by the agency reported that mother and father continued to be homeless and continued to use drugs. Mother claimed father's abuse was triggered by father watching pornography and thinking the women on the videos are mother having sex with father's brother. Mother promised to begin her services.

On May 3, 2019, the resource parent reported that one of the children did not want to visit mother and father as they had told her the children were going to be placed with relatives. The child did not mind the relatives but did not want to change schools.

At the May 8, 2019, jurisdictional hearing, the juvenile court found the second amended petition true, granted reunification services for mother, but denied them for father. Mother was admonished that, if she continued to allow herself to be a victim of domestic abuse and did not participate in the recommended services, she might not be allowed visits in the future. A six-month review hearing was set for October 9, 2019.

*Six-Month Review*

The report filed by the agency for the six-month review hearing recommended that a section 366.26 hearing be set with a plan for relative adoption in Nevada. During the reporting period the children had to be separated into two different homes, to decrease certain behaviors. Maternal relatives from Nevada had had overnight visits with the

7.

children, which went well, but the relatives had not yet been approved through the ICPC process by Nevada, due to the number of people in their home.

Mother and father had continued in their on and off relationship, still living in a homeless encampment. Mother was difficult to get a hold of, so most interactions with her took place prior to her visits with the children. On May 8, 2019, when mother arrived at her mental health assessment, she reported that father had beaten her, and had done so daily. Law enforcement was called. But when the social worker counseled mother to go to a shelter, she refused and said she wanted to stay with father as he was her family. She acknowledged attending visits with bruises but insisted that she tried to cover them so the children could not see them.

Mother acknowledged continued drug use but denied that she needed drug treatment. Father was arrested, but mother stated that she would not testify against him and that she could not live without him.

On September 16, 2019, mother was transported to the agency offices. She had a black eye and said father got mad and threw something at her. She again admitted frequent drug use. According to mother, she and father looked through dumpsters for cans to recycle in order to buy drugs. While mother acknowledged that she needed to stay away from father if she wanted to be sober, she again declined an invitation to enter a shelter. Mother said she could get family help, but she refused to accept it.

Mother began a mental health assessment and attended three sessions but stopped. At two of the sessions, mother was visibly injured, and acknowledged father had caused the injuries. Mother had not yet begun domestic violence victim or parenting education classes. She was terminated from random drug testing for failing to show. She had not attended a substance abuse treatment assessment. When offered a place in a residential treatment program, mother declined.

Mother missed 12 of the scheduled 42 visits. One of the children displayed inappropriate sexualized behavior during visits. Mother and father both had a difficult

time controlling the children. Mother continued to arrive at visits with visible injuries to her arms and face. A visit on September 23, 2019, which was to take place at a park, was cancelled after mother and father had a fight and police were called. The social worker had not been able to contact mother or father since that occurrence. Also, it was noted that mother did not attend visits unless father was present.

A contested six-month review hearing was requested and scheduled for November 6, 2019.

At the hearing on November 6, 2019, each parent was present and provided an offer of proof but no other evidence. Mother's offer of proof was that she had an appointment on November 13, 2019, for a substance abuse treatment assessment and she had gone to counseling on October 18, 2019, with hopes of restarting therapy.

The juvenile court terminated mother's services and a section 366.26 hearing was set for March 11, 2020. Visits were reduced to twice monthly. The juvenile court ordered both mother and father to be present at the section 366.26 hearing and provided them with oral and written writ advisements.

### Section 366.26 Hearing

On February 18, 2020, the agency filed notice of the hearing on selection of a permanent plan, in which it noted that the recommended permanent plan was termination of parental rights and implementation of a plan of adoption. The proof of service indicated that notice was sent by both certified and first-class mail to mother at the Highland Street address in Visalia, the address indicated on the completed JV-140 form. The first-class mail to mother was deposited on January 6, 2020 and tracking on the certified mail indicated it reached the Highland Street address on January 28, 2020.

The report prepared for the section 366.26 hearing recommended termination of parental rights and adoption with maternal relatives in Nevada, if they were approved. If not, the current care providers for two of the children, who had also earlier been the

9.

provider for all five, wished to adopt all five who were all now back in that home. The other care provider also expressed an interest in adopting all five children.

On March 5, 2020, mother called the social worker and stated she was hospitalized with an unknown discharge date. The social worker directed mother to contact her attorney if she could not be present in court.

The children were all making progress on their various issues in the care providers home, but some of the sexualized and aggressive behaviors continued. Mother attended visits as allowed, missing one in February 2020. Father and mother still had trouble controlling the children during visits, and the visitation supervisor had to step in often.

The section 366.26 report was mailed to mother at the Highland Street address on March 10, 2020.

Mother was present with counsel on March 11, 2020, when father requested a contested hearing, which was subsequently set for April 1, 2020.

On March 16, 2020, a maternal relative had contacted the social worker to say that mother had come to the house beaten up and on drugs. They took her to an inpatient drug treatment program, which she entered that day. The social worker again spoke to a maternal relative on April 20, 2020, who reported that mother continued to remain in treatment. An e-mail from the family member included a letter from mother and a letter from the program director confirming mother was in the three-month program located in Tijuana, Mexico. Mother's expected completion date was June 16, 2020.

The hearing was later rescheduled to April 29, 2020, due to the COVID-19 virus. The agency sent a notice of the change of the hearing to mother at the Highland Street address on March 27, 2020, although they knew mother was residing in Tijuana at the time. Due to ongoing covid concerns, the hearing was again rescheduled, this time to May 27, 2020, and the agency again sent notice of the change of hearing date to mother at the Highland Street address on April 2, 2020.

On May 4, 2020, a letter was sent to mother, again at the Highland Street address, and father explaining that, due to the virus, the hearing on May 27, 2020, would be held by remote technology. The court would contact the individual by telephone and the parties were advised to contact the social worker if their telephone numbers had changed.

On May 20, 2020, the agency filed an addendum report recommending parental rights be terminated and a plan of adoption be established. Because the maternal relatives in Nevada had been unable to make the necessary changes to their household, their ICPC assessment had not been approved.

As noted above, the report stated that, on March 16, 2020, a maternal relative had contacted the social worker to say that mother had come to the house beaten up and on drugs. They took her to an inpatient drug treatment program, which she entered that day. The social worker again spoke to a maternal relative on April 20, 2020, who reported that mother continued to remain in treatment. An e-mail from the family member included a letter from mother and a letter from the program director confirming mother was in the three-month program located in Tijuana, Mexico.

Mother did not contact the social worker to inquire about the children or visitation. On May 18, 2020, the social worker contacted the program and confirmed that mother was still there. The social worker then spoke with mother, who said she was doing well, staying clean, and learning the word of God. Mother stated that she did not leave father because of domestic violence, but because she no longer wanted to use drugs. When asked what she would do when she was done with treatment, mother said she planned to live with father, but had not been able to speak to him to discuss their plans.

The social worker noted mother's continued failure to recognize the severity of the domestic violence in her relationship with father. The social worker arranged a video chat between mother and the children. The Skype visit went well, although mother told the oldest child to tell father that she loved and missed him.

The children were now doing well in placement and two of them were released from therapy.

Father was not able to complete any video visits with the children due to technical difficulties. But he was able to have twice a month telephone contact. At a visit on March 31, 2020, father told one of the children he did not know where mother was, which caused the child to cry and worry. After a discussion with the social worker, father told the child, at the next phone visit, that mother was away "at the store." The child was relieved to learn mother had been "found."

The addendum report, which was completed on May 20, 2020, was mailed to mother at an address in Tijuana, Mexico on that date. The report contained the May 27 date and time of the hearing on the face of the report, as well as the recommendation that parental rights be terminated. The record contains no certainty that the addendum report was received by mother.

At the May 27, 2020, section 366.26 hearing, neither mother nor father were present, but both were represented by counsel. The juvenile court asked both counsel if they wished to contact their clients. Father's counsel said he did. Counsel for mother stated, "there was a number in Mexico for the mother, who is in rehab, that was found by the social worker, and I've given that number to the Court." The agency's counsel asked that the number not be shared with father, due to the domestic violence issues.

Following a pause in the proceedings, the juvenile court stated that the court had attempted to contact mother "and it went to voicemail." Father was then contacted, and counsel stated he would question father concerning the beneficial parent child relationship exception. Father then testified by telephone regarding his visits with the children. Mother's counsel made no further requests.

At the conclusion of the hearing, the juvenile court found the children to be adoptable and found that the parents had not demonstrated the beneficial parent child exception and terminated their parental rights.

12.

## DISCUSSION

Mother's only contention on appeal is that she was not properly served with notice of the continued section 366.26 hearing, constituting reversible per se error and requiring remand for a new section 366.26 hearing. We agree that mother was not properly noticed but find the error harmless beyond a reasonable doubt.

"Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children. [Citation.] '[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. [Citation.]' [Citation.] To ensure that result, '[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings. [Citation.]' [Citation.] The notice must comport with due process." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106.) " 'Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend.' [Citation.] 'The child welfare agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. [Citation.] [¶] However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings.' " (*In re J.H.* (2007) 158 Cal.App.4th 174, 182 (*J.H.*).) "Constitutional issues are reviewed de novo." (*Id.* at p. 183.)

Section 294 specifies the necessary procedures for service of notice for a section 366.26 hearing. As applicable here, notice must be given to the mother of the child and all counsel of record. (§ 294, subd. (a)(1) & (8).) "Service of the notice shall be completed at least 45 days before the hearing date. Service is deemed complete at the time the notice is personally delivered to the person named in the notice or 10 days after

13.

the notice has been placed in the mail or sent by electronic mail, or at the expiration of the time prescribed by the order for publication." (§ 294, subd. (c)(1).)

Notice to the parents can be given by "Delivery to a competent person who is at least 18 years of age at the parent's usual place of residence or business, and thereafter served on the parent named in the notice by first-class mail at the place where the notice was delivered or by electronic service pursuant to Section 212.5." (§ 294, subd. (f)(4).)

Further, "Regardless of the type of notice required, or the manner in which it is served, once the court has made the initial finding that notice has properly been given to the parent, ... subsequent notice for any continuation of a Section 366.26 hearing may be by first-class mail to any *last known address*, ... or by any other means that the court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing." (§ 294, subd. (d), italics added.)

Here, on February 18, 2020, the agency filed notice of a section 366.26 hearing on selection of a permanent plan scheduled for March 11, 2020. The notice stated that the recommended permanent plan was termination of parental rights and implementation of a plan of adoption. The proof of service indicated that notice was sent by both certified and first-class mail to mother at the Highland Street address in Visalia, the address indicated on the completed JV-140 form. The first-class mail to mother was deposited on January 6, 2020, and tracking on the certified mail indicated it was delivered to the Highland Street address on January 28, 2020.

Mother admits she received notice at the setting hearing on November 6, 2019, of the March 11, 2020, date. She also acknowledges that she appeared at the initial section 366.26 hearing on March 11, 2020, and did not object when father requested a contested hearing, which was then set for April 1, 2020. Thereafter the section 366.26 hearing was continued twice due to the COVID-19 pandemic, with written notification being mailed each time (April 2 and April 20) to the same Highland Street mailing address on file with the juvenile court and the agency, which was provided by mother at the detention

14.

hearing. However, mother was residing in Tijuana as of March 16, so her statement that she did not receive these notices is reasonable. On May 20, Mother was mailed a copy of the addendum report prior to the May 27, 2020, hearing, which was properly sent to the Tijuana, Mexico address of the treatment facility. There is nothing in the record to show it was received by mother before the hearing. Mother insists that she did not receive notice of these continuances, the first to April 29, 2020, and the second to May 27, 2020, when the hearing was held.

Although the agency knew mother was residing in an inpatient treatment facility in Tijuana on April 20, it was not reasonable for the agency to serve mother only at the Highland Street location since they knew she would be residing in Tijuana at least until June 16.

The agency contends mother waived any claim that notice was defective because she was represented by counsel at the May 27, 2020 section 366.26 hearing, the juvenile court found proper notice had been given, and counsel made no objection and did not raise the issue that notice was defective.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.... [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) In *In re Z.S.* (2015) 235 Cal.App.4th 754, the father argued that his right to due process was violated by inadequate notice of the termination hearing. The court found, "Father was represented throughout, and his counsel acknowledged at the hearing that notice to father had been found proper, and did not argue that father did not receive notice. This waives his argument that notice was defective. Even '[a]ssuming proper notice was not given, [the father]'s failure to raise the defect at the ... hearing constitutes waiver of the issue on appeal.' " (*Id.* at p. 771.)

Here, mother was represented by counsel, who appeared at the section 366.26 hearing on May 27, 2020. Mother was represented by the same counsel throughout the

15.

dependency proceedings, beginning at detention on January 11, 2019. Although mother was not present due to alleged lack of notice, mother's counsel did not object or claim that notice was defective. Counsel gave the court the number of the Tijuana rehabilitation facility, but the record is silent as to when he received the number from the agency or whether he had spoken to his client. As such, it is uncertain whether mother waived any claim that her due process rights were violated by defective notice for the continued section 366.26 hearing.

However, even if notice was deficient, and mother is found not to have waived any objection to the notice, such error was harmless.[2] (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1325 ["a failure to give notice in dependency proceedings is subject to a harmless error analysis"].) "If the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required." (*In re James F.* (2008) 42 Cal.4th 901, 918.) "The harmless error analysis applies in juvenile dependency proceedings even where the error is of constitutional dimension." (*In re J.P.* (2017) 15 Cal.App.5th 789, 798, fn. omitted.) Reversible per se error is only indicated if there was no attempt to serve notice on a parent. (*J.H., supra,* 158 Cal.App.4th at p. 183.)

*In re Angela C.* (2002) 99 Cal.App.4th 389, 395, this court held that the reversible per se error standard not applicable for failure to notice mother of the continued section 366.26 hearing, based on mother participating in some previous proceedings and being noticed of the original section 366.26 hearing. This was the case here, and mother does not contest otherwise. Thus, the reversible per se error standard does not apply. Several appellate courts have applied the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24, in determining whether defective notice

---

**2**      Because we will address the notice issue on the merits, we need not address mother's argument that counsel was ineffective for failing to object to notice.

requires reversal. (*J.H., supra,* 158 Cal.App.4th at p. 183; *In re Justice P.* (2004) 123 Cal.App.4th 181, 183.)

Mother makes only a vague argument as to how the proceedings would have been different had she been present at the section 366.26 hearing. At the section 366.26 hearing, the children were found to be adoptable. "The primary issue in a section 366.26 hearing is whether the dependent child is likely to be adopted." (*In re Angela C., supra,* 99 Cal.App.4th at p. 395.) Since the children were found to be adoptable, mother had the burden of showing that termination of her parental rights would be detrimental under one of the statutory exceptions to adoption in section 366.26, subdivision (c)(1)(B).

Mother contends the exception that applies in this case is the beneficial parent child relationship exception of section 366.26, subdivision (c)(1)(B)(i), which requires that "the parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (See also *In re Angela C., supra,* 99 Cal.App.4th at p. 396.) However, the record is clear that mother was inconsistent in visitation, and she had not visited or even inquired about the children in the months leading up to the continued section 366.26 hearing. Mother could not meet the first prong of the exception to adoption.

Moreover, at the time mother's reunification services were terminated, she consistently failed to drug test and did not complete her mental health assessment. She continued her relationship with father, who beat and abused her, and she refused to attend visits if he was not also present. Many of the visits mother did have with the children showed she was unable to control them and resulted in destructive behaviors on the part of the children. Her noticeable bruises and scars frightened the children. There was no evidence of a parental bond between mother and the children, or that it would be in the children's best interests to be returned to mother's custody. As such, even if mother had received proper notice and had been present at the section 366.26 hearing, and able to

argue the beneficial parent child relationship exception, it is clear beyond a reasonable doubt that her parental rights would still have been terminated.

Mother also makes the assertion that, had she been present, counsel would have been able to request a continuance for her to be able to file a section 388 petition for further reunification services, based on her participation in drug treatment and the vague possibility that she was ready to leave father. However, mother was still in drug treatment at the time of the hearing, had not begun any of her services, and expressed to the social worker and one of her children just a week before the hearing that she loved and missed father, failing to recognize the seriousness of the domestic violence between the two. A section 388 petition would have been futile on the part of mother, as she could not show the legitimate changed circumstances necessary for such a petition. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48–49 [merely changing circumstances not sufficient].)

There is no reasonable doubt that there would have been a different outcome to the May 27, 2020, hearing other than termination of parental rights. Any error in notice to mother on the continued hearing was therefore harmless.

## DISPOSITION

The juvenile court's order terminating mother's parental rights is affirmed.