Filed 3/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.A., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.A.,<br><br>    Defendant and Appellant. | A161510<br><br>(Alameda County<br>Super. Ct. No. JD030302-01) |
| T.A.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Real Party in Interest. | A161529<br><br>(Alameda County<br>Super. Ct. No. JD030302-02) |

In this consolidated appeal and writ petition, presumed father T.A. (Father) appeals from the juvenile court's order summarily denying his

motion under Welfare and Institutions Code[1] section 388 without a hearing and seeks extraordinary relief from the court's order setting a hearing under section 366.26 to consider termination of parental rights, guardianship, or other permanent plan for R.A. (Minor).

We conclude Father sufficiently stated a notice violation to warrant an evidentiary hearing on his section 388 motion, and we grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and K.W. (Mother) lived together for a few years and are the parents of Minor, who was born in 2014. By 2018, Mother was raising her children—Minor and Minor's three older half-siblings—on her own, and she did not know Father's whereabouts.

*Original Petition (October 2018)*

On October 9, 2018, the Alameda County Social Services Agency (Agency) filed a juvenile dependency petition on behalf of Minor, then age four, and three older half-siblings. It was alleged that Mother failed to meet the immediate needs of her children for supervision, clothing, and food, citing section 300, subdivision (b). The petition correctly listed Father's name but stated his address was unknown and identified him as Minor's alleged father. The petition alleged that Father's whereabouts and ability and willingness to care for Minor were unknown, citing section 300, subdivision (g).

On October 10, 2018, the Agency filed an initial report that stated Mother had told a social worker she was a single mother and had no information on the whereabouts of her children's fathers. Mother did provide Father's name (as well as two other names of fathers of her other children) and apparently provided Father's date of birth, too, as the report included

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

Father's date of birth and identified him as Minor's alleged father, address unknown.  The report did not mention any search efforts to locate Father (or the other fathers of Mother's children).

*Agency Search Efforts for Father*

On October 23, 2018, the Agency filed a jurisdiction/disposition report recommending that the children be declared dependents of the court and that they remain in the home of Mother.  Father was listed by name and date of birth as the alleged father.  Under the heading "Search Efforts," it was reported, "The undersigned submitted a search for [Father], alleged father of [Minor].  [Mother] reported that she does not have any contact with [Father]."  There was no description of the results of the search or what the search entailed.

On December 11, 2018, the Agency filed an addendum report.  There was no mention of search efforts to locate Father.

Also on December 11, the juvenile court found true the allegations against Mother (§ 300, subd. (b)) and Father (§ 300, subd. (g)).  The children remained in Mother's care, and family maintenance services were ordered for Mother.  The court found notice had been given as required by law.

*Supplemental Petition Related to Mother's Conduct Only*

On December 24, 2018, Minor and her two half-brothers were taken into protective custody.  On December 26, the Agency filed a supplemental petition under section 387 alleging Mother had left the children (ages 4, 7, and 8 years old) without supervision or provisions for support and Mother's whereabouts were unknown.[2]  Father was identified as Minor's biological and

---

[2] An amended supplemental petition was filed in April 2019, which deleted the allegation that Mother's whereabouts were unknown.  The petition did not contain allegations related to the fathers of the children, and Father's address was listed as unknown.

3

alleged father and his address was unknown.  The Agency filed a detention report; it did not mention any search efforts for Father.  The juvenile court ordered Minor and her two half-brothers detained.

In an Agency report on the supplemental petition filed January 16, 2019, Father's address was still described as unknown.  Under "Search Efforts," the report stated that Mother had no contact with Father.  Addendum reports filed in April and May 2019 continued to list Father's address as unknown.

A contested hearing on the supplemental allegations against Mother was conducted in May and June 2019.

On June 11, the juvenile court found the supplemental allegations true and ordered Minor and her two half-brothers removed from Mother's custody.  The court ordered family reunification services for Mother.

The court also found notice had been given as required by law and "The Agency has exercised due diligence to identify, locate, and contact the child's relatives."  The finding of due diligence appears to be based on the Agency's addendum report of May 15, 2019, which recommended that the court find, among other things, "20.  Family Findings and Engagement: [¶] [x] The Agency has exercised due diligence to identify, locate, and contact the child's relatives," without distinguishing between Minor and her half-brothers.  The report, however, did not describe any efforts to locate Father.

On August 8, 2019, the Agency filed an interim review report.  Father's address was still described as unknown.

*Status Review—Father Located (November 2019)*

On November 12, 2019, the Agency filed a status review report for the six-month review hearing for Mother.  Thirteen months after the original petition was filed, the Agency listed an address for Father for the first time:

California State Prison Solano in Vacaville. Under "Search Efforts," the report stated, "The whereabouts of [Father] are known to the Social Services Agency." How the Agency located Father was not described. After discussing Mother's case plan, the Agency's "reasonable efforts" with Mother, and Mother's progress, the report discussed Father as follows. "[Father] is the alleged father of [Minor] and was not ordered to receive family reunification services on 6/11/2019. [Father] needs to avail himself in order to elevate his paternity status [that is, from alleged father to presumed father] with the court."

On November 20, 2019, at the six-month review hearing for Mother, the court appointed Harini Venkatesan as counsel for Father. The court found that notice had been given as required by law and advised the parties that if the children could not be returned home by the 12-month permanency hearing, the court could develop a permanent plan for the children that could include termination of parental rights.

On February 3, 2020, the Agency filed a status review report for the 12-month hearing, recommending that Mother's reunification services be terminated and that a section 366.26 hearing be set with the permanency plan of legal guardianship with the maternal grandmother. It was reported that a social worker was scheduled to meet with Father on February 7.[3] The report again noted that Father had not been ordered to receive services and that he needed to "avail himself" "to elevate his paternity status."

---

[3] The County does not describe any February 2020 meeting between a social worker and Father in its appellate briefing, and there appears to be no later reference in the record to indicate this scheduled meeting actually occurred.

Father and his counsel Venkatesan were given notice of the 12-month hearing. On February 13, 2020, Father and his new counsel, Mary Day, appeared at the hearing. Mother, however, did not appear, and another hearing was scheduled for March 4. Father requested a paternity inquiry to elevate his status to Minor's presumed father,[4] but the court did not address the request because Mother was not present.

*Father's Motion Under Section 388 (February 2020)*

On February 26, 2020, Father's new counsel Day filed a request to change court orders using Judicial Council Form JV-180 (section 388 motion) seeking an order setting aside all prior findings and orders on the ground Father was not sufficiently notified of the proceedings regarding Minor.[5]

*Father Elevated to Presumed Father Status (March 2020)*

On March 4, 2020, the court conducted a paternity inquiry as to all three of Mother's children who had been removed from Mother's care based on the supplemental petition.

Regarding Minor, Mother testified as follows. Mother lived with Father for three or three-and-a-half years, and he is Minor's father. He was present at Minor's birth, he held Minor out as his daughter, and he lived with Mother and Minor for about 18 months. Mother testified Father "is a very good dad" and provided for Mother and Minor. Minor knows Father is her dad and calls

---

[4] Father also filed a statement regarding parentage averring that his name was on Minor's birth certificate, that Minor lived with him from birth until she was two years old, and that he told family and friends Minor was his child.

[5] The court indicated it was concerned Father's section 388 motion did not include the full names of the parties and granted Father leave to amend. Father filed an amended motion with the parties' full names on March 5, 2020.

him "Daddy." Minor has a half-sister through Father. Minor sees her half-sister and her paternal aunt.

Following Mother's testimony, the court elevated Father to presumed father without objection. The matter was continued as to Mother's contested 12-month review and Father's section 388 motion.[6]

On August 27, 2020, the Agency filed an addendum report, continuing to recommend the termination of services for Mother and scheduling of a section 366.26 hearing. As to Father, it was reported that social worker Ronnie Tucker tried to call the visitation coordinator of California State Prison twice about visiting Father and did not receive a response from the coordinator. Tucker searched a public database in May 2020 and learned that Father was still incarcerated with a possible parole hearing in December 2020. On August 5, 2020, Tucker sent Father a letter regarding supportive services that Father might be able to participate in while in prison. Minor's caregiver (maternal grandmother) reported that Father had been calling Minor about every month to month-and-a-half and that he is only able to call when phone time is available, which is not very often. The caregiver reported that Minor understood Father was incarcerated and enjoyed being able to talk with him.

On August 31, 2020, Father filed a request that the court take judicial notice of (1) information on the California Department of Corrections and Rehabilitation inmate locator website showing Father's admission and eligible parole date, and (2) the files from Father's criminal case in Sonoma County Superior Court.

---

[6] Subsequently, court closure due to Covid-19 and calendar conflicts led to prolonged continuances of hearing Father's section 388 motion and Mother's contest.

On November 3, 2020, the juvenile court held a hearing with counsel and the parties appearing remotely. Father's counsel reported that Father was currently incarcerated at Santa Rita Jail.[7] The court told Father's counsel that it would not hear Father's section 388 motion that day.

County counsel then called social worker Tucker for the limited purpose of updating the court on the case since the Agency's last report. Regarding Father, Tucker testified that the letter he sent Father in August 2020 at prison had been returned in late September with information that Father was no longer there. He sent Father another letter about services to Santa Rita around October 13, and Father did not respond. The letter had not been returned as undeliverable.

*Hearing Father's Section 388 Motion*

On December 1, 2020, the juvenile court heard argument on Father's section 388 motion to set aside prior findings and orders based on insufficient notice. At the outset, the court stated it did not think Father's moving papers made a prima facie showing that an evidentiary hearing was necessary. The court rejected Father's request for judicial notice of the information related to his incarceration and criminal case.

Father's counsel argued that it was a prima facie showing of best interest to a child "if the father comes forward . . . late in the game and requests to have reunification with his child," citing *In re Liam L.* (2015) 240 Cal.App.4th 1068. Counsel informed the court that Father was released from custody November 19, 2020. She argued the changed circumstances were that Father did not receive notice when the original petition was filed, that

___

[7] The children's counsel observed that the inmate locator showed Father in custody in Solano, and Father's counsel responded that "Because of the pandemic, there was a confusion, and they kept him at Santa Rita for quite some time now."

8

he has now appeared, and that "he's clearly no longer in custody and he has come forward and sought to be participating in the hearings."

County counsel took the position Father had not met the best interest prong of section 388. She argued, "I don't see how, basically, undoing the entire jurisdictional dispositional record in this case is in this child's best interest. [¶] [Father] has participated to the extent he was able while in custody. He has not been prejudiced in that regard from participating or assisting the Agency in looking for suitable alternative placement, if one was needed. He has not been in communication with Mr. Tucker in this matter despite Mr. Tucker's efforts to reach out to him at the various penal institutions that he's been [at]. He's out of custody now and, as far as I know, has not reached out to the Agency. You have to show an interest in your child in order for the Court to make such a drastic decision as to undo the entire jurisdictional findings in this case."

The children's counsel stated she agreed with the County's position regarding Minor's best interest. Mother's counsel stated Mother believed it would be in Minor's best interest to reunify with Father.

Father's counsel responded that she recognized the disruption to the case but a due process violation had occurred that needed to be remedied. "[Father] was entirely precluded from the services and all of the opportunity that a parent would have through no fault of his own, that the Agency and the Court completely fail[ed] on their duty under . . . [section] 316.2."[8]

County counsel objected that Father's counsel was now "arguing the merits of her case at this point." The court agreed with the County and

---

[8] Section 316.2 concerns the court's duties to inquire about presumed and alleged fathers and to provide notice of the proceedings. (§ 316.2, subds. (a) and (b).)

9

stated it was "not getting into that." Father's counsel continued that Father was asserting a constitutional issue, "Notice is a fundamental due process issue" and Father was "asking with [his section 388 motion] . . . for his right to participate in the proceedings as he would have had he been noticed that [Minor] had been removed from her custodial" parent.

*Ruling on Father's Section 388 Motion*

After Father's counsel concluded her argument, the court denied Father's section 388 motion. The court noted the parties essentially conceded Father met the first prong of a section 388 motion, showing changed circumstances, and the court agreed. "[Father] was released from a custodial institution approximately 11 days ago, but he did join in our case, I believe, about a year ago. So he's been involved, but the change of circumstances prong is demonstrated."

But the court found Father failed to meet the best-interest prong of a section 388 motion. "The court does not find that the best interest of the child is demonstrated by a preponderance of the evidence. There's a lot of argument about constitutional rights or whatnot of the parent, but the Court also must find that the best interests of the child are met. And here we have [Minor], age four when this case started in October 2018, now six-plus, moving towards, hopefully, some level of permanency. And the Court's decision on the issues before the Court and the best interest standard and prong, the Court does not find is met."

## DISCUSSION

A. *Legal Framework and Standard of Review*

"Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object. [Citation.] The child welfare

10

agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188 (*Justice P.*).) "However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings." (*Id.* at p. 188.)

"[B]ecause the failure to give notice carries such grave consequences in the dependency court," "[w]here [the agency] fails even to make an effort to provide [the parent] the procedural safeguard of notice, reversal is mandated." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 102, 107, 109–110 (*DeJohn B.*) [reversing termination of parental rights where mother was not given notice of the six-month hearing at which reunification services were terminated and section 366.26 hearing was scheduled].) In *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 483 (*Ansley*), the court observed, "It is settled beyond dispute that if a parent proves the absence of due process notice to him in juvenile dependency proceedings a 'fatal defect' exists in the jurisdiction of the juvenile court to have entered the dependency judgment."

A parent may raise an agency's alleged failure to provide him adequate notice through a petition under section 388.[9] (*Ansley, supra,* 185 Cal.App.3d at p. 486.)

A juvenile court may summarily deny a section 388 petition without an evidentiary hearing, but "a petition must be liberally construed in favor of its sufficiency . . . and a hearing may be denied only if the application fails to

---

[9] Section 388 provides that a parent of a dependent child may petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence. (§ 388, subd. (a)(1).)

reveal any change of circumstance or new evidence which might require a change of order." (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413–1414; § 388, subd. (d); Cal. Rules of Court, rule 5.570(a) ["A petition for modification must be liberally construed in favor of its sufficiency"].)

"The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

The analysis, however, is somewhat different when a parent shows he did not receive notice of the dependency petition in violation of due process. In *Ansley*, *supra*, the court held that when a section 388 petition is based on lack of notice, a separate showing of best interest is not required because "a judgment that is proven void due to lack of due process notice suffers from a fatal jurisdictional defect. It may not be perpetrated on the rationale that setting it aside would not, in the [juvenile] court's view, be in the best interests of the child." (*Ansley*, *supra*, 185 Cal.App.3d at p. 490.)

The *Ansley* court further reasoned, "it is implicit in the juvenile dependency statutes that it is always in the best interests of a minor to have a dependency adjudication based upon all material facts and circumstances and the participation of all interested parties entitled to notice." (*Ansley, supra,* 185 Cal.App.3d at pp. 490–491.) Thus, no *additional* showing of best interest to the child is necessary.

"In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*Justice P.*, *supra*, 123 Cal.App.4th at p. 189.)

12

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.)

B.    *Analysis*

As a preliminary matter, we reject the County's[10] claim that Father has forfeited his appellate challenge "because he never objected when the juvenile court found notice was proper." The forfeiture rule the County cites is that "a party is precluded from urging on appeal any point not raised in the trial court." Here, Father clearly raised the issue in the juvenile court that he was not provided adequate notice; indeed, it was the crux of his section 388 motion. The issue is not forfeited.

Turning to the merits of the section 388 motion, Father argued in his motion papers that the Agency did not act with reasonable diligence to locate Father "who remained incarcerated in California through out [*sic*] the proceedings and who could have been located through a search of inmate  on and the record of the proceedings "demonstrate a complete failure on the part of the agency to both use due diligence to locate Father and to provide father proper notice once he was located."

The County asserts the Agency fulfilled its duty to diligently search for Father, citing the report that a social worker "submitted a search for Father." Father replies that there is no evidence in the record of the results of the Agency's search for Father in October 2018; there is, for example, no "due diligence report detailing its efforts to locate Father."[11]

---

[10] The "County" refers to the real party in interest in Father's writ and respondent in Father's appeal.

[11] We contrast the absence of evidence of an Agency search in this case to the documentation of an initial search for the missing father in *Justice P.*

Considering the record as a whole and construing the motion liberally in favor of its sufficiency, we conclude Father sufficiently raised the possibility that the Agency failed to use due diligence to locate him such that he was entitled to an evidentiary hearing on the notice issue in his section 388 motion.[12]

The juvenile court here found that Father showed a change of circumstance but found he failed to show setting aside the prior orders was in Minor's best interest.  The County argues this determination was not an abuse of discretion.

But, as we have seen, when a father shows he did not receive any notice of the dependency petition and the jurisdiction and disposition hearings due to the lack of diligence by the agency, a separate showing of best interest is not required.  (*Ansley*, *supra*, 185 Cal.App.3d at p. 483; see *DeJohn B.*, *supra*, 84 Cal.App.4th at pp. 109–110.)  This is because "it is implicit in the juvenile dependency statutes that it is always in the best interests of a minor to have

There, "the social worker reported that when she searched the Internet for [the alleged father] Stephen using his name, there were no results.  The worker's Internet search using the address listed on Stephen's Arizona driver's license showed that Stephen had used the address of the maternal grandmother and her husband.  The social worker telephoned the maternal grandmother, who said Stephen used the address without permission. . . .[T]he social worker received information listing a different Phoenix address (Colter Street) from the parent search.  The social worker mailed a parent notification letter to Stephen at that address . . . ." (*Justice P.*, *supra*, 123 Cal.App.4th at p. 186.)

[12] It is true that "there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings." (*Justice P.*, *supra*, 123 Cal.App.4th at p. 188.)  But whether the Agency *in this case* exercised due diligence in trying to locate Father should be decided after an evidentiary hearing on the issue.

14

a dependency adjudication based upon all material facts and circumstances and the participation of all interested parties entitled to notice." (*Ansley*, at pp. 490–491.)

We recognize that the court in *Justice P.* rejected the father's position "that as a matter of law any section 388 petition that makes a prima facie showing of a notice violation necessarily meets the requisite 'best interests' prima facie showing." (*Justice P., supra*, 123 Cal.App.4th at p. 190.) *Justice P.* is distinguishable on the facts because, there, the agency "initially made reasonable search efforts." (*Id.* at p. 190.) Here, Father claims the Agency failed to make reasonable search efforts from the very start of Minor's case and failed to show it engaged in a thorough, systematic investigation of Father's whereabouts at any point. We cannot accept the idea that an agency may completely ignore its duty to search for a missing parent and then, should the missing parent show up, rely on the best interest of the child to preclude that parent from participating in the dependency case.

Finally, we reject the County's argument that any error was harmless. In *Justice P.*, the court considered the father's claim that the lack of notice violated due process, applying "the harmless beyond a reasonable doubt standard of prejudice." (*Justice P., supra*, 123 Cal.App.4th at p. 193.) The County argues Father's involvement would have been detrimental to Minor "because it would delay permanency with no likelihood of success," relying on the facts that Father was incarcerated during the dependency period and that he did not participate in any services. The County also asserts there is no evidence that Father had a relationship with Minor. But the court never ordered reunification services for Father, and the record includes Mother's testimony that Father was "a very good dad" and Minor knew him and called him Daddy, as well as the caregiver's report that Minor enjoyed being able to

talk with him. Significantly, Father was out of custody by the time his section 388 motion was summarily denied. Moreover, an incarcerated parent is entitled to reunification services unless it would be detrimental to the child (§ 361.5, subd. (e)(1)), so we do not understand why the County relies on Father's incarceration during the dependency period to try to show that any lack of notice was harmless. On this record, we cannot say that the Agency's alleged failure to exercise due diligence to locate Father was harmless beyond a reasonable doubt.

In sum, Father has shown that he is entitled to an evidentiary hearing on his section 388 motion. At the hearing, both Father and the Agency may present evidence and argument on whether the Agency exercised due diligence to locate Father and provide him notice of the proceedings.

## DISPOSITION

Let an extraordinary writ issue directing the respondent court to vacate its order issued on December 1, 2020, summarily denying petitioner's motion under section 388 and setting the section 366.26 hearing. The respondent court is further directed to conduct an evidentiary hearing on petitioner's motion in accordance with this opinion. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).) The consolidated appeal is dismissed as moot.

_____

Miller, J.

WE CONCUR:

_____

Kline, P.J.

_____

Richman, J.

A161529, A161510, *T.A. v. Superior Court of Alameda County / Alameda County Social Services v. T.A.*

Court:  Alameda County Superior Court

Trial Judge:  Hon. Tara Flanigan

Leslie A. Barry,
East Bay Family Defenders, Mary E. Day, under appointment by the Court of
Appeal, for Petitioner

No appearance for Respondent

Donna R. Ziegler, County Counsel, Samantha Stonework-Hand, Deputy
County Counsel, Hannah L. Reed, Associate County Counsel, for Real Party
in Interest

A161529, A161510, *T.A. v. Superior Court of Alameda County/Alameda
County Social Services v. T.A.*